[No. 39498-3-I. Division One. August 17, 1998.]

*In the Matter of the Marriage of* KIMI LINDEMANN, *Respondent*, and DAVID LINDEMANN, *Appellant.*

*J. David Smith* and *Elizabeth T. Smith*, for appellant.
*Stephen B. Blanchard*, for respondent.

BECKER, J. — The trial court distributed the property of

David and Kimi Lindemann, an unmarried cohabiting couple, by applying community property principles to the extent allowed by *Connell v. Francisco*.[1] Finding that the net value of David's separately-owned auto body business had increased solely as the result of David's labor during the relationship, the court required him to reimburse Kimi for half of the increased value. Because a quasi-marital community is entitled to the fruits of each party's labor, and David has not shown that any part of the increase in value was inherent in the nature of his business, we hold the reimbursement ruling was a proper exercise of the court's discretion.

David and Kimi Lindemann married in 1978, separated in 1981, and obtained a decree of dissolution in 1982. In October 1982, David started an auto body repair business, working out of his garage. He got a business license and opened a checking account for the business in 1984. David and Kimi began living together again in 1985, without remarrying. They stayed together for 10 years, raised their two children, held themselves out as a marital community, and expended little if any effort to keep their income or property separated. During those 10 years, David worked at his auto body business, which he incorporated in 1993, while Kimi worked for a newspaper. Kimi did not do any work for David's business. In 1995 David and Kimi separated again, and Kimi petitioned the court to make an equitable division of their property and liabilities.

■■ There is no dispute that David and Kimi lived in a stable, quasi-marital relationship in which they cohabited knowing a lawful marriage between them did not exist (sometimes archaically referred to as a meretricious relationship). The Washington Supreme Court held in *Connell v. Francisco* that upon the demise of such a relationship, the characterization of property as separate and community will apply by analogy even though in the absence of a mar-

---

[1] *Connell v. Francisco*, 127 Wn.2d 339, 898 P.2d 831 (1995).

riage there is by definition no true community property.[2] At issue in this appeal is how a trial court should characterize and distribute the property interests in a business begun as a separate, unincorporated enterprise, but transformed into a successful corporation by the owner's labor during the quasi-marital relationship.

Upon dissolution of a marriage, all separate and community property is before the court for distribution.[3] A different rule applies upon the break-up of a quasi-marital relationship. To avoid equating cohabitation with marriage, the Supreme Court held in *Connell* that a court may distribute only the property that the cohabiting couple has acquired through efforts extended during the relationship.[4] Separate property is not before the court for distribution.

Because David started his business after his marriage to Kimi ended, but before they began living together again, the trial court determined on summary judgment that David's Auto Body, Inc., was David's separate property, not before the court for distribution. But while the pretrial order of partial summary judgment precluded Kimi from obtaining an ownership interest in the business, it did not prevent her from seeking an equitable share of the value added to the business during the quasi-marital relationship. The court properly reserved that issue for trial.

■■ There is a presumption that any increase in the value of separate property is likewise separate in nature.[5] Thus, at the end of a marriage each spouse is entitled to "the increase in value during the marriage of his or her separately owned property, except to the extent to which the other spouse can show that the increase was attributable to community contributions."[6] The spouse with the separate ownership interest may defend against the other

---

[2]*Id.* at 350-51.

[3]RCW 26.09.080.

[4]*Connell v. Francisco*, 127 Wn.2d at 350.

[5]*In re Marriage of Elam*, 97 Wn.2d 811, 816, 650 P.2d 213 (1982).

[6]*Id.* at 816.

spouse's claim of an equitable interest by showing that the increase in value is attributable not to community contributions of labor or funds, but rather to rents, issues and profits or other qualities inherent in the business.[7] But if the court is persuaded by direct and positive evidence that the increase in value of separate property is attributable to community labor or funds, the community may be equitably entitled to reimbursement for the contributions that caused the increase in value.[8] And in situations where income from the separate property has been commingled with income from community labor to produce an increase in value of the property, the community claimant may invoke a presumption that unless there has been a segregation at the time the income arises, the increase in value belongs to the community.[9]

Applying these principles in the present case, the trial court found after a trial that David's Auto Body, Inc., had increased in value during the 10 years David and Kimi lived together. Efforts at contemporaneous segregation had been negligible. Evidence that David's labor on behalf of the community was the sole source of the increased value overcame the presumption that the increased value of the business was separate in nature. The court awarded one half of that increase, or $109,362.75, to Kimi as her share of the reimbursement.

## INCREASE IN VALUE OF SEPARATE PROPERTY

■ David first claims that Kimi did not prove either that

---

[7]"Property and pecuniary rights owned by the husband before marriage and that acquired by him afterwards by gift, bequest, devise or descent, with the rents, issues and profits thereof, shall not be subject to the debts or contracts of his wife, and he may manage, lease, sell, convey, encumber or devise by will such property without the wife joining in such management, alienation or encumbrance, as fully and to the same effect as though he were unmarried." RCW 26.16.010. *See also Friedlander v. Friedlander,* 58 Wn.2d 288, 295, 362 P.2d 352 (1961).

[8]*In re Marriage of Elam,* 97 Wn.2d at 816-17; *Connell v. Francisco,* 127 Wn.2d at 351.

[9]*See In re Marriage of Johnson,* 28 Wn. App. 574, 578 n.1, 625 P.2d 720 (1981); *In re Marriage of Elam,* 97 Wn.2d at 816 (explaining *Hamlin v. Merlino,* 44 Wn.2d 851, 272 P.2d 125 (1954)).

the business increased in value, or the amount of the increase. We conclude the findings of fact on which the trial court based those determinations are supported by substantial evidence.[10] Kimi testified that when David moved in with her in 1985, he had only his clothes and a motorcycle, and he was just in the process of starting the auto body business. The trial court found the business at that point had a net value of no more than $10,000. That finding is supported by evidence that David could not afford tools for his shop, owed back taxes, had a small balance in his checking account, and relied on his parents' home as security for a loan of $11,000.

■ ■ The trial court found the net increase in the value of the business as a going concern was $218,725.51 at the time of separation. That finding is adequately supported by a business evaluation. David assigns error to the court's reliance on an evaluation instead of an appraisal, but he offered no appraisal himself, and has not presented authority or argument to show why the court's reliance on an evaluation was unjustified.[11]

David claims Kimi failed to prove that the increase in value of his business was due to community effort. But again, there is adequate support for the court's finding that the increase in value of the business was entirely attributable to David's labor. The business initially was marginal and did not prosper until 1991, when David overcame a drug addiction and was able to be more effective and productive. David testified that he worked about 65 hours a week and that the business would fail without his presence and his personal efforts. There was no evidence that the business would have survived, appreciated or earned any income due to its inherent qualities. David made no showing that the increase in value of his business was due to rents, issues, or profits.

---

[10]*See In re Marriage of Gillespie*, 89 Wn. App. 390, 403, 948 P.2d 1338 (1997).

[11]*King Aircraft Sales, Inc. v. Lane*, 68 Wn. App. 706, 717, 846 P.2d 550 (1993) (an appellate court will not consider arguments unsupported by citations to authority).

■■ Ordinarily, a marital community is entitled to the fruits of all labor performed by either party to the relationship because each spouse is the servant of the community.[12] David argues that this rule should not apply to a quasi-marital relationship because the parties have decided not to commit themselves formally to the mutual obligations of a marital community. But if the labor of each party during a quasi-marital relationship were to be presumptively regarded as separate in character, little would remain of the Supreme Court's holding in *Connell*. The court's intention in *Connell* was to "allow the trial court to justly divide property the couple has earned during the relationship through their efforts."[13] The "community" in that case was held entitled to reimbursement for the value of one member's labor.[14] We similarly conclude that David owed his efforts to his quasi-marital community to the same extent as if they had been married.

David next contends that his obligation to devote his labor to the community was adequately fulfilled by the work he did on the jointly-owned real property. He testified that he pulled up stumps, built a three-car garage with a mother-in-law apartment, and frequently helped with the cooking, cleaning and vacuuming. Given these labors on behalf of the community, he argues, the court should have viewed the labor he contributed to his separate business as "separate" efforts.

David is unable to cite any authority recognizing the concept of "separate" efforts. He supports his argument by analogizing labor to money in an account. Community property law allows the apportionment of money in a single bank account to separate and community sources, and recognizes a presumption that improvements to separate property have been paid for by separate funds if there are

---

[12]*See Yesler v. Hochstetler,* 4 Wash. 349, 366, 30 P. 398 (1892); *In re Marriage of Brown,* 100 Wn.2d 729, 737, 675 P.2d 1207 (1984); Harry M. Cross, *The Community Property Law in Washington,* 61 WASH. L. REV. 13, 27 n.69, 57 n.220.

[13]*Connell v. Francisco,* 127 Wn.2d at 350.

[14]*Id.* at 351.

enough funds in the account originating from a separate source.[15] David argues that he should similarly be able to apportion his labor so that labor devoted to his business would be presumptively regarded as originating from a separate source, and labor devoted to household chores regarded as originating from a community source.

The Supreme Court rejected a similar argument in *In re Estate of Witte*.[16] The husband came into the marriage with separate property but failed to maintain a segregation between what he earned from his labor and what he realized as rent, issue or profit of his separate property.[17] The trial court characterized as the husband's separate property the land he acquired during the marriage with his commingled income. The Supreme Court, reversing, declared itself unwilling to let the characterization of property turn on how much each spouse helped around the house. Whether the wife did or did not contribute significantly to housekeeping or child-raising was immaterial "for, even if she did not, the personal earnings of the husband nevertheless belonged to the community."[18] David's industry in home improvement projects is similarly irrelevant; his earnings, like Kimi's, belonged to the community.

Unlike money, which can be separate in character when it is acquired before the relationship, labor performed during a marital or quasi-marital relationship has a community character from its inception. In our community property system, there is no basis for allocating one party's labor to a separate property account.

The trial court did not err in concluding that Kimi car-

---

[15]*See In re Marriage of Pearson-Maines*, 70 Wn. App. 860, 867, 855 P.2d 1210 (1993).

[16]*In re Estate of Witte*, 21 Wn.2d 112, 127-28, 150 P.2d 595 (1944).

[17]*Id.* at 121.

[18]*Id.* at 128.

ried her burden of proving that the increase in value of David's business was the product of community labor.

## REIMBURSEMENT AND OFFSET

██ ██ The right to reimbursement is an equitable remedy, intended to assure that the separate owner is not unjustly enriched at the expense of the community.[19] Therefore, the right of reimbursement may not arise if the court finds that the community realized a "reciprocal benefit" for "its use and enjoyment of the individually owned property."[20] For example, in *In re Marriage of Miracle*,[21] the trial court properly denied the community's claim for reimbursement of funds used to make payments on a residence separately owned by the wife, because the house was occupied as the family home and its monthly rental value was greater than the monthly payments.

At trial David introduced evidence of draws and checks he wrote from his business account to pay for family expenses. These contributions, he claims, were a benefit provided by his business to the community offsetting any community contribution of his labor to the business. According to David, the right of reimbursement runs in the opposite direction. The community, he argues, should reimburse his business for expenditures from his business account on behalf of the community, over and above the salary he received after incorporation. Such expenditures include the lease payments on a vehicle and cellular telephone, and payments on Kimi's health insurance and term life insurance.

Washington courts have in some cases denied reimbursement to the community if one spouse's labor in a separate business has been adequately compensated by a salary.

[19]*In re Marriage of Miracle*, 101 Wn.2d 137, 139, 675 P.2d 1229 (1984); Harry M. Cross, *The Community Property Law in Washington*, 61 WASH. L. REV. 13, 70 (1986).

[20]*Connell v. Francisco*, 127 Wn.2d at 351; *In re Marriage of Miracle*, 101 Wn.2d at 139.

[21]*In re Marriage of Miracle*, 101 Wn.2d 137, 675 P.2d 1229 (1984).

*Hamlin v. Merlino*[22] is one such case, and David relies on it for the proposition that Kimi had the burden of proving that his salary (or in the early years, the total of his draws and checks for community purchases) did not fairly and adequately compensate the community for the value of his labor.

In *Hamlin*, the husband owned the stock of an incorporated grocery business before marrying. The couple made a prenuptial agreement providing that their separate property would remain separate. During their marriage, the husband paid himself a salary of $1,858 per year. The salary was consumed by the community's living expenses. After the wife died, the administrator of her estate brought suit, claiming that the increased value of the husband's business was community property because it accrued as a result of the husband's labor during the marriage.

Cautioning that each case turns on its own facts, the Supreme Court in *Hamlin* rejected the administrator's claim. The court first acknowledged that such an increase presumptively belonged to the community absent "a contemporaneous segregation of the income between the community and the separate estates."[23] But Mr. Merlino's consistent segregation of his separate estate overcame the presumption.[24] The court reasoned that Mr. Merlino's corporate salary adequately compensated the community for its contribution of his labor. Any dividends paid or any enhanced value of the stock resulting from profits reinvested in the corporation remained separate in character as the issues and profits of his separate property.[25]

---

[22]*Hamlin v. Merlino*, 44 Wn.2d 851, 272 P.2d 125 (1954).

[23]*Id.* at 858 (emphasis omitted). *See also In re Marriage of Elam*, 97 Wn.2d at 816.

[24]*Hamlin v. Merlino*, 44 Wn.2d at 858.

[25]*Id. See also In re Estate of Hebert*, 169 Wash. 402, 14 P.2d 6 (1932); *In re Marriage of Brooks*, 51 Wn. App. 882, 889, 756 P.2d 161 (1988) (increase in value of separate interest in law partnership, exclusive of goodwill, was separate property; salary fully compensated the community).

 *Hamlin*, as well as *In re Estate of Hebert*[26] on which *Hamlin* relies, involved a consistently profitable incorporated business which the husband at all times carefully preserved as a separate legal entity apart from his personal affairs. The circumstances of the present case stand in marked contrast.[27] David did not come into the relationship with an incorporated, thriving business and a salary. Instead, he came into the relationship virtually broke and addicted to drugs. His business, as described by the trial court, had little if any market value: "In October of 1985, soon after cohabitation, David's parents had to co-sign and offer their home as security so David could get a business loan of $10,979.13 with small monthly payments of $295.85 . . . . That shows that the bank did not consider the business to have sufficient assets to secure a relatively small loan." David did not receive a salary until he incorporated the business 8 years into the 10-year period of their quasi-marital relationship. He pledged the business against loans for the community's needs, and pledged the community home against loans for the business.[28] He made no discernible effort to segregate the income attributable to his community labor from any "rents, issues, and profits" inherently arising from his unincorporated business.[29] Under these circumstances, it was appropriate for the court to

---

[26] *In re Estate of Hebert*, 169 Wash. 402, 14 P.2d 6 (1932).

[27] The facts of the present case are closer to *In re Estate of Buchanan*, 89 Wash. 172, 177-80, 154 P.2d 129 (1916), in which a woman's initial capital investment in a business, which was separate in character as it was given shortly before marriage, was later mixed with her husband's considerable labor, resulting over ten years in a valuable business. Although the business in *Estate of Buchanan* was organized as a corporation, "it might be said to have been operated much as a partnership." *Estate of Buchanan*, 89 Wash. at 177. The court in *Estate of Buchanan* held the business to be entirely community in character because the value of the labor so dramatically outweighed the value of the wife's capital investment in causing the business to succeed.

[28] *Cf. In re Estate of Hebert*, 169 Wash. at 405 (community's credit never pledged to aid the business).

[29] *See In re Marriage of Johnson*, 28 Wn. App. 574, 578 n.1, 625 P.2d 720 (1981) ("The rule of contemporaneous segregation was devised to cope with problems of identification arising from the hopeless commingling or confusion of income from separate property, usually an unincorporated business, with income from community labor. In such cases the difficulty lies in ascertaining the extent

conclude that David's Auto Body, Inc., was not in the same category as the business in *Hamlin*, and that the increased value of David's business was community in character because it had been achieved by community labor.

By showing that the increase was due to community labor, Kimi satisfied her burden of proving that the community was entitled to reimbursement. Contrary to David's assertion, it was not necessary for Kimi to further prove the absence of an offset. There could be an offset only if the community received some beneficial use of David's separate business. David's contributions to the community in the form of draws on his business account were not an amenity or benefit provided to the community courtesy of David's Auto Body. Rather, the community was entitled to these contributions as the fruits of David's labor. The trial court properly characterized them as earned income to David.

In summary, the trial court reasonably found the community entitled to reimbursement for the increased value David's labor added to his business.

## DISPOSITION OF THE FAMILY HOME

▆▆ The court awarded the family home to Kimi. David contends the trial court erred in failing to partition the family home according to the principles of a tenancy in common. We disagree. The *Connell* case makes it clear that the court is to seek a just and equitable distribution of the property, not apply principles of co-tenancy.[30] Selling the home in this case would be wasteful because the costs of sale would consume virtually all the equity.

▆▆ The court made David responsible for making the ongoing mortgage payments on the home, and allowed him to credit these payments against the debt owed to Kimi. David contends he should be allowed the tax benefits of

or proportion to which these sources have produced the resulting income. . . . the presumption in favor of the community prevails unless there has been a segregation at the time the income arises.'').

[30]*Connell v. Francisco*, 127 Wn.2d at 349.

making the mortgage payments. David makes the mortgage payments in lieu of paying directly on his debt to Kimi, therefore, it is actually Kimi's money that is being applied to the mortgage, and she rightfully retains the tax benefits of the mortgage payments.

David contends the court erred in failing to award him an offset for the value of Kimi's use of the home after their separation. But whether or not to charge rent is a matter on which a court may exercise some discretion. Here, Kimi became responsible for payments on a mortgage which was originally incurred, in part, to pay off David's separate debts. Under these circumstances the trial court did not abuse its discretion in denying an offset.

## RULING ON RECONSIDERATION

David raises a number of procedural challenges to minor revisions the court made to its initial decree upon Kimi's motion for reconsideration. Without citing authority, he contends Kimi waived her right to request reconsideration by failing to submit proposed findings and conclusions and failing to object to the findings and conclusions initially entered by the court. This court will not consider argument unsupported by citations to authority.[31] David also contends the trial court erred in failing to strike documents supporting Kimi's motion for reconsideration for failure to meet evidentiary standards. He has made no showing of prejudice, and in any event there is no indication the court relied on the attachments. Any error in failing to strike the attachments is therefore harmless, and not grounds for reversal.[32]

The original decree gave David 10 years to pay off the lien on his business. On reconsideration, the court shortened the term to eight years. David contends that such an alteration of the original judgment is not autho-

---

[31]*King Aircraft Sales, Inc. v. Lane*, 68 Wn. App. 706, 717, 846 P.2d 550 (1993).

[32]*Wallace Real Estate Inv. v. Groves*, 72 Wn. App. 759, 771, 868 P.2d 149, *aff'd*, 124 Wn.2d 881 (1994).

rized by any of the nine reasons listed in Superior Court Civil Rule 59(a) for vacating a judgment and granting a new trial upon a motion for reconsideration. However, modifications to the judgment short of vacation are contemplated by Civil Rule 59(h), which provides: "A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment." We conclude the trial court acted within its authority when it entertained Kimi's motion to alter the terms of payment contained in the original judgment.

## DISPOSITION OF OTHER PROPERTY

■■■ David contends the court did not make a just and equitable distribution of the property when, without granting him an offset, it allowed Kimi to retain $34,000 she withdrew from a joint account. A related issue was whether funds paid by one of David's former employees as a settlement for moneys embezzled from the business should be credited to the community or to David's business. The initial settlement payment of $75,000 was deposited in the couple's joint account. Part of it was used to pay various expenses including retirement of debt on credit cards held by Kimi. David withdrew a large sum for his own purposes when he left the family home, and told Kimi the rest ($34,000) was for her. The court found that although the original loss due to the embezzlement was a loss to the business, the repayment was commingled instead of being deposited back into the business. Therefore, the $34,000 retained by Kimi was her share of a community asset or, in the alternative, the $34,000 was a gift from David to Kimi. Because there was sufficient evidence to support these findings, the court did not err in denying David a reimbursement or set off.

The judgment is affirmed. Both parties' requests for fees on appeal are denied.

Affirmed.

Agid, A.C.J., and Ellington, J., concur.

Review denied at 137 Wn.2d 1016 (1999).