# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

MARGARET ELLEN MORGAN, a
Washington individual,

             Respondent,

       v.

NICKY WARREN BRINEY, a
Washington individual,

             Appellant.

No. 74657-0-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: June 26, 2017

TRICKEY, J. — Nicky Briney appeals the trial court's distribution of property after the termination of his committed intimate relationship (CIR) with Margaret Morgan.[1] Briney argues that his CIR with Morgan began in 1999 not 1995 because she moved out of their shared residence for eight months, returning in March 1999. Because the parties moved into a jointly-selected home in 1995 and cohabitated for a decade after Morgan moved back, it was not error to conclude that the CIR had begun by 1995.

Briney also maintains that the trial court erred by characterizing the home he and Morgan lived in as a community asset.[2] The house was presumptively community property because it was acquired after the CIR began. Because Briney did not meet his burden of showing it was purchased with his separate funds, we

---

[1] In the past, courts referred to CIRs as "meretricious" relationships, but, because the term has a negative connotation, courts now use the term "committed intimate relationship," which "'accurately describes the status of the parties and is less derogatory.'" Olver v. Fowler, 161 Wn.2d 655, 657 n.1, 168 P.3d 348 (2007) (quoting Olver v. Fowler, 131 Wn. App. 135, 140 n.9, 126 P.3d 69 (2006)).

[2] Although we recognize that, by definition, there is no "community" property outside a marriage, we refer to the property as community property because property acquired during a CIR is "characterized in a similar manner as income and property acquired during marriage." Connell v. Francisco, 127 Wn.2d 339, 351, 898 P.2d 831 (1995).

affirm the court's award to Morgan based on her interest in the value of the house.

Finally, Briney argues that the court erred by awarding Morgan an interest in the increase in value of his separate property. Because Morgan did not show that the increase in value was due to community efforts, we reverse that award.

## FACTS

Briney and Morgan began a romantic relationship in 1987.[3] In the early years of their dating, Morgan moved to California to work for her family's business.[4] While Morgan lived in California, both Morgan and Briney "remained committed to the relationship."[5] Morgan visited Seattle regularly and stayed with Briney in his apartment, they talked by phone, and they "exchanged loving correspondence."[6]

In 1990, Morgan returned to Seattle. She and Briney decided to live together. Briney proposed to Morgan in 1991. He gave her an engagement ring, which she kept for the next 20 years.

In 1992, after Briney's adult daughter came to live with him, Morgan moved into her own apartment nearby. Morgan and Briney continued to date but saw each other less frequently. During this time, Briney helped Morgan's family while they were experiencing a financial crisis.

---

[3] Briney does not assign error to any of the court's findings of fact except its "findings that Ms. Morgan's services contributed to the increase in the value of the house." Br. of Appellant at 20. Accordingly, the remaining findings of fact are verities on appeal. Davis v. Dep't of Labor & Indus., 94 Wn.2d 119, 123, 615 P.2d 1279 (1980).

[4] The trial court gives 1998 as the date for this move. Both parties give the date for Morgan's move to California as 1988. Br. of Appellant at 6; Br. of Resp't at 6. They do not mention that the trial court dated the move as 1998. Given that the court also found that Morgan moved back from California in 1990, we assume that the 1998 date was a scrivener's error.

[5] Clerk's Papers (CP) at 671.

[6] CP at 671.

2

In mid-1994, Morgan moved back in with Briney. The two lived together in an apartment until November 1995. While they lived in the apartment, Briney paid for the rent, utilities, and most meals. In 1995, Morgan and Briney began looking for a house to buy.

In November 1995, they agreed to buy a house in the Queen Anne neighborhood of Seattle. Briney's name was the only one on the title to the house, he provided the initial down payment of $74,000, and he was the sole obligor on the original mortgage.

The house was "dated" and "'needed work.'"[7] The parties agreed to remodel it but took very little action. In 1998, Morgan moved out due to tensions about the lack of remodeling. They lived apart for approximately eight months.[8]

In the spring of 1999, Morgan moved back into the house.[9] The couple took on three major remodels of the home. Briney paid for the remodels, but Morgan and Briney collaborated on what should be done. Morgan performed extensive landscaping and gardening.

They were "couple-like in all aspects of their lives."[10] They had a "two-way supportive relationship during good times and bad times."[11] Briney was the primary earner, and Morgan, though working full-time, took on a greater share of

---

[7] CP at 673.
[8] The trial court refers to this break as a year and a half break in its findings of fact. Both parties describe this as a shorter separation in their briefs. Br. of Appellant at 9; Br. of Resp't at 10. They do not mention that the trial court described the break as longer. We assume that the parties agree the break was eight months and that the court's description of it as a year and a half was a scrivener's error.
[9] CP at 674.
[10] CP at 678.
[11] CP at 678.

3

the household duties. Morgan "cooked, cleaned, and did [Briney's] laundry throughout the entire relationship."[12]

Unfortunately, Briney became depressed and suicidal during the third remodel. Even after it was completed, Briney remained in a "severe depressive state" for years, while Morgan provided unwavering aid and support.[13]

In 2013, Morgan moved out after Briney became "very abusive."[14] In August 2013, Morgan initiated this action to divide the property.

In May 2015, the case proceeded to a bench trial. The court found that Morgan and Briney were in a CIR from the time they moved into the house in November 1995 until they broke up in 2013, that the house was a community asset, and that Morgan was entitled to nearly half the value of the house and half of the increase in value of some of Briney's separate property.

Briney appeals.

## ANALYSIS

### Property Distribution at Termination of CIR

A CIR "is a stable, marital-like relationship where both parties cohabit with knowledge that a lawful marriage between them does not exist." Connell, 127 Wn.2d 339, 346, 898 P.2d 831 (1995). Washington has a "three-prong analysis" for disposing of property after a CIR. In re Marriage of Pennington, 142 Wn.2d 592, 602, 14 P.3d 752 (2000). First, the trial court must determine whether a CIR existed. Pennington, 142 Wn.2d at 602. Second, if such a relationship existed,

---

[12] CP at 677.
[13] CP at 676.
[14] CP at 670, 677.

4

"the trial court evaluates the interest each party has in the property acquired during the relationship. Third, the trial court then makes a just and equitable distribution of such property." Pennington, 142 Wn.2d at 602.

This court reviews property distribution at the end of a CIR for an abuse of discretion, but it reviews the trial court's findings of fact for substantial evidence and the conclusions of law de novo. Soltero v. Wimer, 159 Wn.2d 428, 433, 150 P.3d 552 (2007).

Briney challenges the trial court's determinations for each prong. He argues that the CIR came into existence in 1999 not 1995. He argues that the trial court erred by concluding that the house was a community asset and awarding Morgan an interest in the increase in the value of his separate property, including the house. He also argues that the court erred in its division of the community property. We address each argument in turn.

### Existence of a CIR

Briney argues that the trial court erred when it determined that Morgan and Briney's CIR began in 1995. Specifically, Briney argues that, because Morgan moved out for eight months between 1998 and 1999, their CIR only began after Morgan moved back in for the last time in March 1999. Looking at the totality of the circumstances, Morgan and Briney's CIR continued during the eight months they lived apart. Therefore, their CIR began at least as early as 1995.

Five factors are relevant to the existence of a CIR: "continuous cohabitation, duration of the relationship, purpose of the relationship, pooling of resources and services for joint projects, and the intent of the parties." Connell, 127 Wn.2d at

5

346. These factors are not exclusive, and no one factor is more important than the others. Pennington, 142 Wn.2d at 602, 605. Ultimately, the existence of a CIR depends on the facts of each case, and the "factors are meant to reach all relevant evidence" that may be helpful. Pennington, 142 Wn.2d at 602.

Here, Morgan and Briney had a relationship of long duration. Briney concedes that the CIR lasted at least 14 years. They had also continuously cohabitated for about four years before Morgan moved out in 1998.[15] In the context of an almost 20-year relationship, an eight-month separation is not very significant. Even while they were not living together, Morgan and Briney "remained in contact" and did not date other people.[16] This suggests the couple still intended to be in a romantic relationship.

The court specifically found that the two "lived and worked together as a couple" from 1995 to 2013, even during the time they did not cohabitate.[17] The record supports this finding. Morgan moved only three blocks away, Morgan said she did not consider them to be breaking up when she moved out, and Briney continued to pay for the insurance on Morgan's truck during the physical separation.

Based on all the relevant evidence, it was not error for the court to conclude that the CIR had begun by the time they moved into the house in 1995. In fact, the trial court's findings that Morgan and Briney lived in an apartment continuously

---

[15] The exact dates are not clear from the record, but Morgan moved into an apartment with Briney in mid-1994 and moved out of the house summer 1998 (approximately eight months before spring 1999).
[16] CP at 674-75. The court did not find Briney's assertions that he had dated other people during the eight months credible.
[17] CP at 677.

6

together for months starting sometime in 1994, looked for a house together in 1995, "agreed to buy" a house that needed work, and moved into that house together, suggest that the CIR began *before* Morgan and Briney moved into the house in Queen Anne in November 1995. Therefore, we disagree with the trial court's conclusion that the CIR began in 1995, and hold that the CIR began when Morgan moved into the apartment with Briney in mid-1994.[18]

### Property Characterization

*House*

Briney argues that the trial court erred by awarding Morgan a share in the value of the house. Briney says it was separate property because it was acquired before the CIR began. Briney also maintains that even if the house was acquired after the CIR began, he purchased it with his separate funds. The trial court properly determined that the house was a community asset because Briney acquired it after the CIR had begun and Briney did not meet his burden to show he used separate funds to buy it.

The character of property, whether community or separate, is determined at the time of acquisition. In re Marriage of Skarbek, 100 Wn. App. 444, 447, 997 P.2d 447 (2000). When the purchase of property includes a real estate contract or a mortgage, it is "acquired when the obligation is undertaken." In re Estate of

---

[18] In its decree and final judgment, the court stated that the CIR began in November 1995, when the parties moved into the house. Elsewhere it described the CIR as existing more loosely from 1995 to 2013. Briney notes that Morgan did not challenge the court's conclusion that the CIR began "at the same time" that Briney purchased the house. Reply Br. of Appellant at 3-4. But, as Briney has already made clear, the existence of a CIR, or the date it begins, is a legal conclusion, which this court reviews de novo. As explained below, this court must determine when the CIR began because the legal character of assets depend on whether they were acquired before or after the beginning of the CIR.

7

Borghi, 167 Wn.2d 480, 484, 219 P.3d 932 (2009) (citing Harry M. Cross, The Community Property Law in Washington, 61 WASH. L. REV. 13, 39 (1986)). Property acquired before a CIR began is presumed to be separate property; property acquired during a CIR is presumed to be community property. Skarbek, 100 Wn. App. at 447, 449.[19]

But the property retains the character of the funds used to purchase it. If one partner purchases property with separate funds during the CIR, the property is that partner's separate property. Merritt v. Newkirk, 155 Wash. 517, 520-21, 285 P. 442 (1930). The party asserting that an asset acquired during the CIR is separate property "has the burden of proving it was acquired with separate funds." Skarbek, 100 Wn. App. at 449. The party must present "clear, cogent, and convincing evidence that the asset falls within a separate property exception." Burgess v. Crossan, 189 Wn. App. 97, 103, 358 P.3d 416 (2015). The party cannot meet this burden by "mere self-serving" declarations that the partner "acquired it from separate funds and a showing that separate funds were available for that purpose." Berol v. Berol, 37 Wn.2d 380, 382, 223 P.2d 1055 (1950). The party must be able to trace the funds "with some degree of particularity." Berol, 37 Wn.2d at 382. The absence of a finding of fact on an issue is "presumptively a negative finding against the person with the burden of proof." Taplett v. Khela, 60 Wn. App. 751, 759, 807 P.2d 885 (1991).

Here, the trial court determined that the house was "clearly a community

---

[19] In a CIR, separate property is not subject to division at the end of the relationship. In re Marriage of Lindemann, 92 Wn. App. 64, 68-69, 960 P.2d 966 (1998).

asset."[20] As explained above, the CIR began in mid-1994. The house was purchased in November 1995. Therefore, the house is presumptively a community asset.

To rebut that presumption, Briney needed to show that he acquired the house with separate funds. The parties agree that Briney paid the initial $74,000 down payment, but the trial court's findings of fact do not contain any specific information about the source of the funds that Briney used to make that down payment.[21] Briney does not trace the funds he used for the down payment to a specific separate account or show that the funds came from separate income.

In his briefing, Briney points to his self-serving testimony that it was his money, Morgan's admission that it was his money, and statements showing his net worth at the time of acquisition. That is not the type of proof required to satisfy his burden, and there is no finding that he met his burden with clear and convincing evidence. Therefore, we presume that the court made a finding against Briney on this issue. Accordingly, we conclude that the trial court did not err by characterizing the house as a community asset.

*Briney's Separate Property*

Briney argues that the trial court erred by determining that Morgan had an interest in the increase in the value of his retirement and investment accounts, which were his separate property. Specifically, Briney argues that Morgan

---

[20] CP at 686.

[21] The court describes the money for the down payment as Briney's "funds" in one of its legal conclusions, but also talks about Morgan's "efforts" to improve the property during the CIR in the same conclusion. CP at 682-83. Noting that one partner provides a service or asset is not the same as legally characterizing that service or asset as separate rather than community.

provided no proof that the increase in the value of these separate assets was attributable to community efforts. Morgan contends that the trial court did not err because her support to the community allowed the assets to increase in value and Briney admitted that his labor increased the value of these assets during the CIR. We agree with Briney.

The court presumes that any increase in the value of one party's separate property during a CIR remains separate. Lindemann, 92 Wn. App. at 69. The community is not entitled to any increase in value attributable to natural increases in value or separate efforts, which include rents, issues, profits, and "other qualities inherent in the business." Lindemann, 92 Wn. App. at 70. But the community "is entitled to the fruits of all labor performed by either party to the relationship because each [partner] is the servant of the community." Lindemann, 92 Wn. App. at 72.[22]

Accordingly, the other party can rebut the presumption that the increase in value is separate by showing with clear and convincing evidence that the increase is attributable to community efforts, including "community labor or funds."[23] Lindemann, 92 Wn. App. at 70. If a party's community labor or funds increases the value of separate property, the community may be entitled to reimbursement for that labor. Connell, 127 Wn.2d at 351. When a party has not segregated his income from separate property from the income he produced by community labor

_____

[22] The community in a CIR is entitled to those fruits "to the same extent" as if it was a marital community. Lindemann, 92 Wn. App. at 72.

[23] Lindemann phrases the burden of proof as "direct and positive" evidence, but the Supreme Court has indicated that we should conclude that burden is equal to the more general "clear and convincing" standard. 92 Wn. App. at 70; Borghi, 167 Wn.2d at 490.

income, and he uses his income to increase the value of separate property, a presumption arises that "the increase in value belongs to the community." Lindemann, 92 Wn. App. at 70.

Here, the trial court awarded Morgan an interest in the increase in value of Briney's investment and retirement accounts. Morgan would presumptively be entitled to a share of these assets only if they were community property or if they were separate property but the increase in their value was attributable to community efforts. There are no findings of fact to support an award on either of these grounds.

Morgan does not appear to dispute that, because Briney acquired these assets before the CIR began, the assets are presumptively separate. But Morgan argues that these assets are, nevertheless, presumed to be community assets because Briney commingled the income he earned during the CIR with the income earned from the separate accounts. To support her commingling argument, Morgan cites Briney's statements that he contributed to these accounts during the CIR and Briney's admissions that he does not know whether the increase in value of his accounts was due to his contributions or market appreciation. But there was no finding that Briney comingled the income attributable to community efforts with income from the separate sources. Accordingly, Morgan was not entitled to a share in the increase in the value of Briney's separate financial assets on that basis.

Thus, in order to rebut the presumption that the increase in value remained separate, Morgan had to show that it was attributable to community efforts. There

11

are no trial court findings of fact confirming that she met her burden. Morgan argues that the trial court's conclusion that "[t]here is only one exhibit from Mr. Briney dating back to 2006 that demonstrates Mr. Briney received income from his investment accounts into the bank accounts he would use to support the community expenses" demonstrates that community efforts increased the value of Briney's separate property.[24] But the fact that Briney used income from his investment accounts, separate assets, to pay for some community expenses does not prove that community efforts increased the value of those investment accounts.

Morgan also relies on Briney's statement that the value of those "'assets increased during [the] 18 years [of their CIR] because of market appreciation and the money and work [he] invested in them.'"[25] While that may be proof that some portion of the increase in value was attributable to Briney's efforts during the CIR, his statement is not sufficient evidence to support awarding Morgan half of the increase in value of Briney's separate property.

Finally, Morgan relies on exhibits 76, 77, and 78, which were not admitted at trial, to show that the commingling of Briney's separate and community assets and that community efforts increased the value of Briney's separate property. Briney argues that this court should not consider those exhibits because the trial court did not admit them during trial. We agree with Briney.

This court does not "accept evidence on appeal that was not before the trial court." State v. Curtiss, 161 Wn. App. 673, 703, 250 P.3d 496 (2011) (citing RAP 9.11).

---

[24] CP at 685.
[25] Br. of Resp't at 41 (quoting CP at 37).

Here, the trial court listed the exhibits it considered in its findings of fact and conclusions of law. It did not include exhibits 76, 77, and 78. Briney proposed admitting these exhibits at trial, Morgan objected, and the court reserved ruling on whether to admit them. The court also reserved ruling on exhibits 71 and 72, but admitted them after Briney offered them at trial. Although Briney reviewed exhibits 76, 77, and 78 during his testimony, he never moved to admit them.

In her brief, Morgan says that the court "referred to" exhibit 78 in its conclusions of law. In its fifth conclusion of law, the court mentions that "[t]here is only one exhibit from Mr. Briney dating back to 2006 that demonstrates Mr. Briney received income from his investment accounts into the bank accounts he would use to support the community expenses."[26] But the court did not cite any exhibit by number.[27] And, further, the court did not admit exhibit 78 at trial.

In June 2016, long after the trial had concluded, Morgan moved to have the trial court include exhibits 76, 77, and 78 in the record for appeal. The court granted Morgan's motion. This ruling, which specifically orders that the exhibits be "included in the court record," does not order that the exhibits be admitted into evidence or indicate that the court considered them at trial.[28] Accordingly, we do not consider these exhibits as evidence on appeal.

Lastly, Morgan places great emphasis on the "incalculable" contributions

---

[26] CP at 685.

[27] When Briney moved for reconsideration, he pointed out that the court referred to an unspecified exhibit in its findings. In response, Morgan attached the contents of exhibit 78, without labeling it as exhibit 78. Briney objected to its use on the basis that the court had not admitted it at trial. Briney requested that, if the court were to rely on the information in exhibit 78 to support its findings and conclusions, he be granted an opportunity to rebut Morgan's and the court's use of the exhibit.

[28] CP at 916.

13

she made to Briney's mental health during the CIR.[29] These contributions show why equity may favor a generous division to Morgan of the community assets that were before the court. But the trial court did not link Morgan's efforts to the increase in value of Briney's separate property and Briney's separate property is not before the court for distribution. Thus, her efforts do not entitle her to a share of Briney's separate property.

We conclude that the trial court erred in awarding Morgan an interest in the increase in value of the separate property because Morgan did not meet her burden of proving that any increase in value of Briney's investment and retirement accounts was attributable to community efforts. Accordingly, we reverse that award.

### Property Distribution

#### Value of House

Briney argues that, even if the trial court did not err by awarding Morgan a share in the value of the house, the court's award to Morgan for the house was too high. Briney makes several arguments about what portion of the value of the house is an increase in the value due attributable to community efforts. Because the court awarded Morgan a share in the value of the house as a community asset, not based on the increase in value of separate property, we do not address these arguments.

Briney also argues that the court erred by incorrectly assessing the value of the house. We conclude that the trial court's assessment of the value of the house

---

[29] Br. of Resp't at 45.

was supported by substantial evidence.

Although the court labeled its determination of the house's value a conclusion of law, it is essentially a finding of fact. See Para-Med. Leasing, Inc. v. Hangen, 48 Wn. App. 389, 397, 739 P.2d 717 (1987). The parties offered competing valuations of the house, and the trial court chose Morgan's valuation. The trial court relied on a professional appraisal of the house, completed in the fall of 2014 to calculate the value. Because the appraisal occurred over a year after the CIR ended, the court reduced the value of the house by 15 percent. The court apparently rejected Briney's suggestion that the court determine the value of the house from an assessment completed in 2013 for tax purposes. We affirm the trial court's award to Morgan for her share in the value of the house.

*Offset*

Briney contends that the trial court erred by refusing to offset any award to Morgan by the value of the benefit Morgan enjoyed from using Briney's separate property during the CIR. We disagree.

The court is required to make an equitable distribution of community property at the conclusion of a CIR. Connell, 127 Wn.2d at 351. If the court has determined that the community should be reimbursed for one party's labor, it "may" offset that reimbursement "against any reciprocal benefit received by the 'community.'" Connell, 127 Wn.2d at 351.

We conclude that declining to offset Morgan's award was within the trial court's discretion. Because we reverse the court's award to Morgan of an interest in Briney's separate property, Morgan's award is a share of the community

15

property, not a reimbursement to the community of value added to the separate property. Regardless, the court identified several reasons why equity would favor a large award to Morgan, including that Briney had originally included Morgan in his will, that Morgan was responsible for nursing Briney through a crippling depression, and that they spent a majority of their adult lives together. The court's reasons justify its award.

We affirm the trial court's award to Morgan of an interest in the house, but reverse its award to her of an interest in Briney's separate financial assets. We remand for entry of a new judgment.

Trickey, J

WE CONCUR: