# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Marriage of:<br><br>LOANN HONG PHAM,<br><br>                        Appellant,<br><br>  and<br><br>SAMAN ALI SELAHI,<br><br>                      Respondent. | No. 60295-4-II<br><br><br>UNPUBLISHED OPINION |

PRICE, A.C.J. — Loann Pham appeals the trial court's final dissolution orders following the end of her marriage to Saman Selahi. Pham argues that the trial court erred in its property distribution by characterizing Selahi's income earned during the marriage as Selahi's separate property. She contends that based on this error, the trial court abused its discretion in distributing particular assets. Pham also requests attorney fees on appeal.

We disagree that the trial court abused its discretion in the characterization or distribution of assets. Thus, we affirm the trial court's final dissolution orders and deny Pham's request for attorney fees.

## FACTS

Pham and Selahi married in July 2018. During the marriage, they lived in Selahi's home in Bonney Lake. In 2023, Pham moved out of the house and petitioned for divorce.

The two-day dissolution trial began October 29, 2024. The primary issue at trial was whether the parties had established a committed intimate relationship prior to the marriage. This

issue is not relevant to this appeal, but evidence related to two particular assets is relevant—Selahi's linked Bank of America accounts (ending in 0666 and 1375) and the increased value of Selahi's Bonney Lake home.

During the marriage, Selahi worked as a physician through his corporation, Saman Selahi, M.D., Inc. Selahi testified that he paid himself a salary and he received profit distributions from the company. Selahi deposited his income into his savings account (0666) from 2018 through 2022. Selahi would then transfer some of the income into the linked checking account (1375) and use it to pay living expenses.

At the time of marriage, the combined balance of the Bank of America accounts was $350,901.07. At the time of separation, the combined balance had increased to $423,649. Selahi estimated that he deposited approximately $150,000 to $200,000 a year into the savings account. Pham introduced the full statement of the savings account (0666) for the year 2021 showing that there were brief periods where the balance of the account fell below the initial $350,901.07 in the account at the time of the marriage. Ex. 5, at 3 (showing lowest balance was $306,357.75).

Selahi also testified that he bought the Bonney Lake home in 2016, before he and Pham were married. Selahi purchased the house for $557,500, with a mortgage financing $390,250 of the purchase price. As of January 2024, the principal balance of the mortgage had been paid down to $189,465.94. Shortly after separation, in October 2023, the home was appraised at $1.1 million.

Pham agreed that Selahi provided all financial support during their marriage. Pham used Selahi's credit cards to pay for living expenses, such as groceries and other household needs. However, Pham explained that during the marriage she contributed by performing upkeep and

2

improvements to the house. Pham performed maintenance and improvement projects such as landscaping, installing patio lighting, putting up shelves, and assembling furniture.

At closing argument, Pham argued that because Selahi deposited his income during the marriage into the linked Bank of America accounts, there was no way to tell which portion of the current balance was his separate property (the $350,901.07 existing in the account at the time of marriage) and which portion was community property. She asserted that because community funds were continuously deposited into the accounts, the funds were commingled such that the entire amount in the accounts should be community property.

Selahi responded that only $72,728 in the Bank of America accounts was community property because that amount represented the increase in the account balance during the marriage. Selahi argued that the account was not commingled because the community income in the account could be determined by simply subtracting the premarriage balance ($350,901.07) from the postmarriage balance ($423,649). He explained,

> Separate property is determined at the date of the acquisition. So there's no question that before they were married, this 350- that was in the account was separate property. Okay?
>
> . . . .
>
> Basically, there was 350- in there. Pay went in there. Income went in there. It got transferred out to pay bills. And at the end, the balance grew by $72,000.
>
> The best example is this: If the account started at the day of marriage with zero, how much money would be in there today? The $72,000. So the 350- is clearly separate property.

2 VRP at 308-09.

In rebuttal, Pham argued that the Bank of America accounts had to be considered commingled because there was no way to tell whether the actual dollars in the account were from separate funds, community funds, or both:

> That's the whole point about commingling—is you don't know which dollars were being spent and which were being preserved. Because the bank doesn't—if you deposit a dollar—$10 in the bank in ten different installments of $1, and then you withdraw a dollar from the bank, the bank doesn't tell you whether you withdrew the first dollar you put into the account, the seventh dollar, the tenth dollar, or anything.

> And that's what we don't know now—is with over $7-, $800,000 in deposits during this five-year period or however long it was—we don't know whether the community income is in the bank account or whether money that was in there back on the date of separation is in the bank account.

2 VRP at 315-16.

The increased value in the Bonney Lake home did not receive significant attention from the parties in their arguments to the trial court. Pham asked to be awarded half the equity in the Bonney Lake home, but she made no specific argument as to why she was entitled a portion of the equity in the Bonney Lake home in either her trial brief or her closing argument. Selahi simply identified the Bonney Lake home as his separate property because it was acquired prior to marriage.

Following the parties' arguments, the trial court found that the funds in the Bank of America accounts (0666 and 3175) were not commingled. In its oral explanation, the trial court used language suggesting that this was because only Selahi's "separate wages" contributed to the account:

> I don't agree with [Pham]'s counsel that the account ending in 0666 was commingled so that it is indistinguishable which funds are community and which funds are separate. The only thing going into that account was the *[Selahi]'s*

> *separate wages, withdrawals, and deposits*. Nothing from [Pham] went into that account as she did not work and did not contribute financially to the relationship. And so I don't think it was commingled.

3 VRP at 7-8 (emphasis added). Despite its reference to Selahi's "separate wages," the trial court still characterized the increase in the accounts as community property. The trial court awarded Pham $36,364[1], representing half of the increase in value of the Bank of America accounts during the marriage. The trial court awarded the remaining balance of the Bank of America accounts to Selahi.

As for the Bonney Lake home, the trial court awarded its entire value to Selahi as his separate property, explaining,

> With regard to asset division, the home, I'm finding that the Bonney Lake home is the separate property of Mr. Selahi and, therefore, will be awarded to him. The Court considered whether there was—the Court considered the equity, I should say, in the family home and whether any of the equity could be considered community.

> Looking back over my notes of the testimony of both the parties, as far as the purchase of the home, [Pham]'s name is not on the deed or any of the mortgage documents that would indicate that there was an intent to make the marriage home a community property. [Pham] never contributed to the mortgage before or after marriage. That was revealed in testimony. There was no testimony that [Pham] contributed to any monthly utilities.

> [Pham] did testify about doing gardening, landscaping, performing simple repairs around the house, and overall upkeep of the home. The Court is assuming "overall upkeep" meant keeping the home clean and tidy. There was not further explanation of what "overall upkeep meant," although I do recall testimony that [Pham] was working on—like woodworking. I think it was replacing panels or doing something with wood.

> But the jobs that [Pham] performed in the family home for the general upkeep of the home don't necessarily rise to the level, in this Court's opinion, that would yield any of the equity to community property—as community property and that would

---

[1] The trial court's order identifies a total amount of $46,364 because the trial court awarded Pham an additional $10,000 as compensation for the car she had been using. Footnote 2, *infra*.

entitle [Pham] to any of the equity in the family home. So the Court is awarding a hundred percent of the equity in the family home to [Selahi].

3 VRP at 5-6.

In addition to the above, the trial court awarded Pham an additional $152,063 representing her portion of the community interest in various other bank and retirement accounts. The trial court also awarded Pham an additional $10,000 to allow her to obtain a car.[2] The trial court entered final dissolution orders dissolving the marriage and distributing the parties' property.[3]

Pham appeals.

## ANALYSIS

Pham argues that the superior court erred by characterizing Selahi's income earned during the marriage as his separate property. Pham then argues because of this fundamental error, the trial court wrongfully rejected her argument that the Bank of America accounts were commingled with separate and community funds—which would mean that the full value of the accounts should be considered a community asset.

Similarly, Pham argues that the trial court's mischaracterization of Selahi's income as separate property affected its characterization of the Bonney Lake home's equity. Pham contends that the trial court failed to recognize the community interest in the increased equity of the Bonney

---

[2] Pham had been using one of Selahi's car during the marriage and then after the separation. The trial court ordered the car be awarded to Selahi as his separate property, but it awarded the $10,000 to Pham as compensation.

[3] Pham filed a motion for reconsideration, but it appears that the motion was never heard. There is no order on the motion for reconsideration in the record before us.

Lake home because the trial court mistakenly believed that the mortgage was paid with Selahi's "separate income." Br. of Appellant at 21.

We disagree with Pham's characterization of the trial court's rulings and hold that the trial court did not abuse its discretion. To the extent that Pham raises a new argument on appeal, we decline to address it.

## I. DISTRIBUTION OF PROPERTY

We review the trial court's characterization of property de novo. *In re Marriage of Zier*, 136 Wn. App. 40, 45, 147 P.3d 624 (2006), *review denied*, 162 Wn.2d 1008 (2007). "[T]he character of property as separate or community property is determined at the date of acquisition." *In re Estate of Borghi*, 167 Wn.2d 480, 484, 219 P.3d 932 (2009). "In Washington, all property acquired during marriage is presumptively community property." *In re Marriage of Watanabe*, 199 Wn.2d 342, 351, 506 P.3d 630 (2022).

However, we review the trial court's division of property in a dissolution proceeding for an abuse of discretion. *In re Marriage of Muhammad*, 153 Wn.2d 795, 803, 108 P.3d 779 (2005). " 'A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons.' " *Id.* (quoting *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997)).

In a dissolution proceeding, the trial court must make a "just and equitable" distribution of property. RCW 26.09.080. All property, both community and separate, is before the trial court for distribution. RCW 26.09.080. When determining a just and equitable distribution of property, the trial court must consider

all relevant factors including, but not limited to:

> (1) The nature and extent of the community property;
>
> (2) The nature and extent of the separate property;
>
> (3) The duration of the marriage or domestic partnership; and
>
> (4) The economic circumstances of each spouse or domestic partner at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to a spouse or domestic partner with whom the children reside the majority of the time.

RCW 26.09.080.

"[T]rial court decisions in a dissolution action will seldom be changed upon appeal." *In re Marriage of Landry*, 103 Wn.2d 807, 809, 699 P.2d 214 (1985). As our Supreme Court has cautioned,

> Appellate courts should not encourage appeals by tinkering with them. The emotional and financial interests affected by such decisions are best served by finality.

*Id.* Thus, we will affirm the trial court's decision unless no reasonable judge would have reached the same conclusion. *Id.* at 809-10.

A. CHARACTERIZATION OF SELAHI'S INCOME

As an initial matter, Pham claims that the trial court made a fundamental error by characterizing the income Selahi earned during the marriage as separate property. Br. of Appellant at 17; *see also* 3 VRP at 8 (when rejecting Pham's commingling argument, the trial court states, "The only thing going into that account was the [Selahi]'s separate wages, withdrawals, and deposits. Nothing from [Pham] went into that account as she did not work and did not contribute financially to the relationship."). Based on the trial court's oral statements, Pham essentially argues that trial court misunderstood a core tenant of community property law—that wages earned during marriage are community property.

We agree that the trial court made an inartful reference to Selahi's income that arguably characterized it as separate property. But a complete review of the trial court's decisions and property distribution shows that it understood that the income Selahi earned during the marriage was community property, not separate property. For example, the trial court awarded Pham 50 percent of the increase in value (during marriage) of the linked Bank of America accounts, despite that only Selahi's wages were deposited in those accounts. If the trial court had actually determined that Selahi's income was his separate property, it would not have recognized *any* community interest in the Bank of America accounts, or any of the other bank and retirement accounts for that matter. Accordingly, notwithstanding the trial court's comments, its characterization of the increase in value of the Bank of America accounts shows that the trial court did not fundamentally misunderstand the character of Selahi's income earned during the marriage.

B. DISTRIBUTION OF BANK OF AMERICA ACCOUNTS

Next, Pham argues that the trial court erred by rejecting her argument that the Bank of America accounts were commingled.[4] She argues that because it was impossible to tell which specific dollars in the accounts were community funds and which were the preexisting separate funds, the entire value of the accounts should have been characterized as community property. We disagree.

---

[4] At points, Pham asserts that the trial court erred by refusing to reach the commingling issue. *See* Br. of Appellant at 14 ("As to the commingling issue, the trial [c]ourt never reached that decision, instead . . . ."). We disagree with Pham's characterization of the trial court's decision. The trial court's ruling demonstrates that it considered, and rejected, Pham's commingling argument. 3 VRP at 7-8 ("I don't agree with [Pham]'s counsel that the account ending in 0666 was commingled so that it is indistinguishable which funds are community and which funds are separate.").

Separate property will remain separate "through all of its changes and transitions as long as it can be traced and identified." *Watanabe*, 199 Wn.2d at 351. Separate property is presumed to remain separate property "absent direct and positive evidence of intent to convert to community property." *Id*.

But when there is commingling of separate and community funds, separate funds can become community property. "[W]here money in the bank cannot be segregated as to its sources and its separate and community natures have become so confused that the court cannot apportion them, the presumptions in favor of community property and the favor with which it is regarded require that all of such funds be attributed to the community." *In re Estate of Smith*, 73 Wn.2d 629, 631, 440 P.2d 179 (1968).

Here, the trial court determined that the funds in the Bank of America accounts were not so commingled that they could not be traced and identified. The amounts in the accounts at the time of marriage and at the time of separation were undisputed. Approximately $350,000 was in the Bank of America accounts at the time of the marriage and approximately $423,000 was in the accounts at the time of separation. Recognizing the community interest in the increase in value of the accounts, the trial court distributed the difference in value equally between the parties. Whether this was error depends on whether the initial approximately $350,000 in the accounts lost its character as Selahi's separate property. We determine that the trial court did not err.

Contrary to Pham's argument, the trial court does not have to identify the character of the specific dollars in the accounts as either separate or community property. The trial court recognized that the only use of the Bank of America accounts was to deposit Selahi's income (a community asset during marriage) and then transfer that income into the checking account to pay

community expenses. Notwithstanding the evidence that the balance may have dropped slightly below the initial $350,000 at some points during the marriage, it was reasonable for the trial court to segregate the initial separate funds from the later acquired community funds by subtracting the initial (pre-marriage) balance from ending (post-marriage) balance.

Further, as the trial court recognized, there was no additional commingling of funds during the marriage—the withdrawals from the account were used only for community expenses (rather than being used for any arguably separate expenses by either party), and there is no evidence that Selahi deposited any separate property into the accounts during the marriage or had any intent to convert his separate funds in the accounts into community property. Thus, the trial court did not abuse its discretion by determining that the initial balance of the Bank of America accounts retained its character as separate property and awarding Pham half of the community property interest in the increased balance of the Bank of America accounts.

Moreover, the trial court is required to make a just and equitable distribution of property considering multiple factors, of which the character of the property is only one. *See* RCW 26.09.080. Pham has failed to show that no reasonable judge would make such a distribution of property, therefore, we reject Pham's contention that we should tinker with the trial court's distribution of the Bank of America accounts. *See Landry*, 103 Wn.2d at 809 ("Appellate courts should not encourage appeals by tinkering with [dissolution decisions].").

C.  DISTRIBUTION OF THE BONNEY LAKE HOME

Finally, Pham argues that the trial court erred by awarding the Bonney Lake home to Selahi without awarding her any compensation for the community interest in the home. We disagree.

If separate property increases in value during a marriage, there is a presumption that the increase is likewise separate in nature. *In re Marriage of Lindemann*, 92 Wn. App. 64, 69, 960 P.2d 966 (1998), *review denied*, 137 Wn.2d 1016 (1999). But this presumption can be overcome. "[I]f the court is persuaded by *direct and positive evidence* that the increase in value of separate property is attributable to community labor or funds, the community may be equitably entitled to reimbursement for the contributions that caused the increase in value." *Id.* at 70 (emphasis added). But, "[a] right to reimbursement may not arise if the contributing spouse received a reciprocal benefit flowing from the use of the property." *In re Marriage of Miracle*, 101 Wn.2d 137, 139, 675 P.2d 1229 (1984).

Here, the trial court properly characterized the house, as a whole, as Selahi's separate property; it is undisputed that the home was acquired prior to the marriage exclusively using Selahi's funds. *See Borghi*, 167 Wn.2d at 484 ("[T]he character of property as separate or community property is determined at the date of acquisition.").

At trial, Pham appeared to argue that she was entitled to half of the increased value of the Bonney Lake home due to community contribution of labor.[5] *See* 1 VRP 47-49 (Pham testifying as to maintenance and projects related to the Bonney Lake home). Although the value of the home increased from the purchase price of $557,500 to the appraised value of $1.1 million—an increase of close to $550,000—Pham did not offer any direct and positive evidence identifying the value of her contributions or proving how they contributed to the increased value of the home.

---

[5] Pham's primary argument below was that the parties established a committed intimate relationship prior to the purchase of the Bonney Lake home, making the entire home community property. The trial court rejected this argument, and Pham has not appealed that determination.

Ultimately, the trial court determined that it was not proven that her efforts increased the value of the home or that a community interest in the home had been established. *See, e.g.*, 3 VRP at 6 ("The petitioner did testify about doing gardening, landscaping, performing simple repairs around the house, and overall upkeep of the home. The Court is assuming 'overall upkeep' meant keeping the home clean and tidy. There was not further explanation of what 'overall upkeep meant' . . . ."). Considering the trial court has broad discretion, we do not see that this decision was an abuse of that discretion.

But Pham makes a new argument for the first time on appeal. Pham now argues that the trial court should award her compensation based on the community paying the mortgage on the home during the marriage. Pham claims that "[w]hile some of the increase in equity was certainly attributable to appreciation of Mr. Selahi's separate interest in the property, a portion of that increased equity was the result of the marital community's reduction of the mortgage against the property via mortgage payments made using community income." Br. of Appellant at 21.

However, Pham never made this argument to the trial court. The trial court was not asked to evaluate the effect of the reduction of the debt on the increase of the equity. Pham's failure to make this argument has consequences. When Pham limited her arguments about the value of the home to her own labors, the trial court had no occasion to fully consider the complex balancing of the equities of the community contribution (including the mortgage payments) against the community benefit Pham received from living in the house for the duration of the marriage. *See Miracle*, 101 Wn.2d at 139. We may decline to consider any issue raised for the first time on appeal. RAP 2.5(a). Because Pham failed to argue that she was entitled to the increased equity in the home resulting from community payment of the mortgage debt (rather than arguing that

community contribution resulted in increased value of the home), we decline to consider Pham's new argument on appeal.

II. ATTORNEY FEES ON APPEAL

Pham requests attorney fees on appeal based on RAP 18.1 and RCW 26.09.140. Specifically, Pham argues that because the trial court determined that she had need and Selahi had ability to pay, she is entitled to attorney fees on appeal under RCW 26.09.140. We disagree and deny Pham's request for attorney fees.[6]

RCW 26.09.140 provides,

Upon any appeal, the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees in addition to statutory costs.

"In exercising our discretion, we consider the issues' arguable merit on appeal and the parties' financial resources, balancing the financial need of the requesting party against the other party's ability to pay." *In re Marriage of Kim*, 179 Wn. App. 232, 256, 317 P.3d 555, *review denied*, 180 Wn.2d 1012 (2014).

Although it appears that Pham has need and Selahi may have the ability to pay, an award of attorney fees is not warranted. Pham's appeal is based on the mischaracterization of the trial court's rulings and raising a new argument on appeal. Thus, Pham has failed to prevail on any issue. We deny Pham's request for attorney fees.

---

[6] We note that Pham failed to comply with RAP 18.1(b) which requires that the "party must devote a section of its opening brief to the request for the fees or expenses." Here, Pham did not devote a section of her brief to her request for attorney fees because she incorporated the request into the conclusion section of the brief.

CONCLUSION

In sum, we cannot say that no reasonable judge would have made the property distributions the trial court made in this case. The trial court, despite its inartful oral ruling, recognized that the property acquired during the marriage, including Selahi's income, was community property. The trial court then exercised its discretion in determining the distribution of the Bank of America linked accounts and the increased value of the Bonney Lake home. And we decline to consider Pham's argument that the trial court erred by failing to make additional distributions to Pham based on the increase in the home's equity due to the community payment toward the mortgage.

We affirm the trial court's final dissolution orders and deny Pham's request for attorney fees on appeal.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, A.C.J.

We concur:

LEE, J.

CHE, J.