IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re the Domestic Partnership of: | ) | No. 37323-1-III |
| | ) | |
| TAMMY VANDERZANDEN, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | UNPUBLISHED OPINION |
| and | ) | |
| | ) | |
| MIRANDA DETORE, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Miranda Detore appeals the trial court's property division and child support orders following the termination of her domestic partnership with Tammy Vanderzanden.  We affirm.

FACTS

Miranda Detore and Tammy Vanderzanden met in 2010 and in 2012 entered into a committed intimate relationship.  In March 2013, they registered as domestic partners in Oregon and had a child together that year.  The relationship ended in April 2017.

Their dissolution trial lasted six days.  Eleven witnesses were called in addition to the parties.  On direct examination, Detore explained that she and Vanderzanden had one

joint bank account together, but otherwise did not add one another to their separate accounts. The following exchange took place:

> [DETORE'S COUNSEL:] From the time you got together in 2010 through . . . April of 2017, did you generally keep separate accounts?
> [DETORE:] Yes.
> [DETORE'S COUNSEL:] Okay. And why? I mean, how did you guys end up working that out?
> [DETORE:] We just agreed to keep our finances separate.

Report of Proceedings (RP) at 1017.

Throughout trial, Detore's counsel repeatedly requested to engage in closing arguments. On the fifth day of trial, after discussing the parties' 401(k)s, the following exchange took place:

> [DETORE'S COUNSEL]: So maybe we will need to summarize that for you in closing at least and give you a roadmap.
> THE COURT: I'm not sure you're going to get to closing. You're running out of time . . . and I'm guessing you're just not going to have a closing, but we will see.

RP at 1151. Shortly thereafter, counsel again brought up closing:

> [DETORE'S COUNSEL]: What's your thoughts on closing while we have a few minutes?
> THE COURT: We're probably not getting to closing. I will be using what I have. You've briefed this, so I'm not sure there's anything more you need to tell me.
> [DETORE'S COUNSEL]: Are you going to indulge written closings from us then?
> THE COURT: No. The vast amount of things that I have to read, I don't really need to add that, because as you can see, you've handed me

2

these agreed binders.  While you've referred to some of them, I do have to go through those.  So I would rather spend my time going through your exhibits so I can know what the evidence is versus what argument is, and then the briefing with regard to the legal issues, which is, at least I'm hoping you have them.

      [DETORE'S COUNSEL]:  Okay.  You know, I understand you don't want to hear a long closing.  There was a couple of points I wanted to draw out.  If we run where we have some time, can we allocate 15 minutes to make a couple of points for counsel?

      THE COURT:  We will see how we do.  I'm not going to promise anything. . . .

RP at 1158-59.  Later that day, prior to the lunch recess, counsel again raised the issue:

      [DETORE'S COUNSEL]:  Can I ask you this: I'm really hoping to reserve, whether I have to cut my cross short or what—or my redirect, a few minutes for a closing argument.  Are you going to entertain that as long as we cut that short?

      THE COURT:  It depends upon where we are in the day.

RP at 1251.  The following day, counsel asked:

      [DETORE'S COUNSEL]:  Can inquire, if I keep my redirect to five minutes, can I have five minutes for closing?

      THE COURT:  There will be no close with regards to this.  I just need you to ask your questions.

      [DETORE'S COUNSEL]:  We're not going to do a closing then?

      THE COURT:  We're not.

RP at 1338.

At the close of testimony, while the parties discussed presentation, the following

exchange took place:

[DETORE'S COUNSEL]: Can I make one request? I know you've told me no on a written closing and I'm not going to ask to drop a lot of stuff on you and I respect your ruling on the closing argument, too. Can I produce a bullet point that would be less than two pages? No reading, just a few bullet points that I would ask the court to consider, no argument.

THE COURT: If you can do a bullet point in two pages, I will accept that. Mr. Cronin, you may also do a bullet point in two pages.

. . . .

. . . I have your trial briefs, so I'm assuming most of what I need from [you] position-wise is going to be in the trial briefs, and then the joint trial management with the outlines of costs.

[DETORE'S COUNSEL]: It would be just a few bullet points for the Court's consideration and no argument.

THE COURT: The other thing that I would ask you to put in that bullet point . . . is a specific as to what the vast number of exhibits that I have might be most important to you . . . .

[DETORE'S COUNSEL]: Understand. Thank you.

RP at 1356-57. The court asked that the bullet points be submitted by October 18 and scheduled November 1, 2019, for its oral ruling.

On November 3, 2019, Detore's counsel sent a letter to the court asking for clarification on the final child support order. The letter, which Vanderzanden's counsel also received, stated in part:

During your oral ruling on November 1, 2019, you provided us with each party's income determinations and instructed that we are to calculate the transfer payment. A question has arisen as I have started the process of making these calculations. I am raising this issue in advance of presentment given your instructions at the oral ruling that presentment is to occur without oral argument.

4

> You have ordered a 8/6 parenting plan with all school breaks shared equally. . . .  Ms. Vanderzanden will have only approximately 18 days more days of residential time per year than Ms. Detore. . . .  Under this scenario are you granting a residential credit to Ms. Detore, and if so, how much?
> Thank you for your consideration of this question.  I have tried to present it in a non-argumentative manner.

Clerk's Papers (CP) at 175.

On November 21, 2019, Detore hired Julie C. Watts as new counsel.  On November 27, Detore's trial counsel withdrew and Ms. Watts substituted as counsel of record.  Vanderzanden's counsel sent Ms. Watts the proposed orders on December 2, with a presentation date of December 6.  On December 3, Ms. Watts called Vanderzanden's counsel to discuss a continuance of the presentation, but opposing counsel would not agree.  Ms. Watts received the transcript of the oral ruling on December 3 and received former counsel's client file on December 4.

On December 5, 2019, Ms. Watts moved for a continuance of the December 6 presentation.  In her motion, she argued that CR 52 required a party to be served with copies of the proposed findings, conclusions and order at least five days before presentment pursuant to CR 52.

On December 6, 2019, the court granted Detore's request to continue presentation to December 9.  The order stated Detore must submit her proposed orders by 8:30 a.m. on

December 9. The court already had Vanderzanden's proposed orders and noted it would elect which set to sign.

On December 9, 2019, Detore submitted objections to Vanderzanden's proposed orders. She argued that the residential schedule provided Vanderzanden 54 to 55 percent of the parenting time and Detore 45 to 46 percent of the parenting time, which was a "substantially shared residential schedule" by statute.[1] *See* RCW 26.09.525. She requested the court clarify its finding that Vanderzanden is the "primary parent" in light of the statutory definition. CP at 77. She also requested the court address a deviation in child support considering the substantially shared schedule and proposed Detore pay $390 per month to Vanderzanden instead of the standard calculation.

On December 23, 2019, the court entered its findings and conclusions. The parenting plan granted joint decision-making authority and scheduled residential time primarily with Vanderzanden. After analyzing the statutory criteria and entering thorough written findings, the court determined that Vanderzanden was the "primary parent." CP at 77.

Using the standard child support calculation, the court determined that Detore's support obligation would be $985.80, and Vanderzanden's would be $339.20. Under

---

[1] CP at 162.

"Other Factors For Consideration" in the child support worksheets, the court noted: "The court has not ordered a deviation as no deviation was requested at the time of trial." CP at 52. The final child support order provided: "The monthly child support amount ordered . . . is the same as the standard calculation listed . . . because no one asked for a deviation from the standard calculation, at the time of trial. No evidence presented to make required findings." CP at 56. The last sentence was handwritten and initialed by the court. The court ordered Detore to pay $985.00 per month in child support.

*Property division*

The parties stipulated to all property values. The court awarded each party her own separate assets and liabilities. Detore's separate property was valued at $2.2 million and Vanderzanden's separate property was valued at $450,000. The court found the only community-like assets and liabilities were related to the parties' Montana property. That property was purchased by Detore during the relationship, who later quit claimed it to Vanderzanden. The court explained:

> I do believe there is an equalization payment owed by Ms. Detore to Ms. Vanderzanden because I'm awarding the Montana property to Ms. Detore. I am making the equalization payment based on the value of the Montana property, the mortgage on the Montana property, the student loan payments, as well as payments to the property by Ms. Vanderzanden's parents. And the equalization payment, in essence, is more equitable than equal. The payment is a $150,000 dollar equalization payment plus interest at 12%.

7

CP at 81.

> Regarding Vanderzanden's 401(k), the court found:
>
> The value at the time of trial was $251,944. This is an asset owned by Ms. Vanderzanden prior to any relationship with Ms. Detore. There is certainly separate property interest in the 401(k). There also may be a community or community-like interest from March 9, 2013 through December 31, 2014 when Ms. Vanderzanden made no further contributions.
>
> However, the Court has no evidence of a community or community like portion of this 401(k) if any. There was nothing offered to the Court to distinguish what such a portion would comprise. The Court lacks any ability to split out a community or community like portion. The Court awards the Stimson 401(k) to Ms. Vanderzanden with no ability to assess what a community and/or community-like portion, if any, might be.

CP at 80. In its incorporated oral ruling, the court noted:

> I can make a finding that it is both a separate and a community asset to a certain extent, and what the total value is, I'm awarding that to Ms. Vanderzanden on her side of the equation, but don't have to ability to assess what the community-like portion might be, although, I do have that in mind when we get to the bottom line.

RP at 1386.

> The court then addressed Detore's student loans:
>
> What was not referenced is the student loans of Ms. Detore. It's possible that some of Ms. Detore's student loans are a community or community like debt based upon when the loan(s) was/were incurred. However, the Court lacks any of [sic] information. The loan(s) potentially could be mixed separate and community. Again, the loan(s) could be all or both. The balances on the student loan(s), whatever the balance(s) are Ms. Detore's debt.

CP at 81. Vanderzanden's parents were owed debts including approximately $23,000 in Detore's student loans, which they paid directly to the creditor.

Finally, the court addressed attorney fees:

At this point in time, these parties have spent an extraordinary amount in attorney's fees. However, each party shall pay her own attorney's fees and costs. The court is well aware of the financial standings in making this decision.

CP at 83. The court denied any maintenance.

Detore appeals.

## ANALYSIS

### DISTRIBUTION OF 401(k) AND STUDENT LOANS

In a heading in her opening brief, Detore contends the trial court erred in failing to equitably distribute Vanderzanden's 401(k) and her own student loans. We address each issue in turn.

*Vanderzanden's 401(k)*

Detore first argues the trial court erred in failing to determine the community-like interest in Vanderzanden's 401(k). She then argues that because Vanderzanden had access to those records and failed to provide sufficient information to make a valuation, the court should have resolved the issue against Vanderzanden. We disagree.

9

We first address Vanderzanden's argument that Detore failed to preserve this error. We review only those findings of fact that the appellant assigns error to and unchallenged findings are verities on appeal. *In re Marriage of Drlik*, 121 Wn. App. 269, 275, 87 P.3d 1192 (2004). Here, the trial court found that (1) the 401(k)'s value is $251,944, (2) it was owned by Vanderzanden prior to the relationship, (3) there is a separate property interest in it, and (4) "[t]here also may be a community or community-like interest." CP at 80. However, the parties failed to provide enough information to distinguish the community portion, so the court awarded the full value to Vanderzanden because it had "no ability to assess what a community and/or community-like portion, if any, might be." CP at 80.

Detore assigned error to the trial court's failure to determine the value of the community-like interest. She also assigned error to the trial court's failure to construe the uncertainty against the party who had access to the record. Because she did assign error to these findings, we proceed to address the merits of her argument.

In dissolution proceedings, a trial court must make a just and equitable distribution of the parties' assets and liabilities based on factors provided by RCW 26.09.080. *In re Marriage of Larson*, 178 Wn. App. 133, 137, 313 P.3d 1228 (2013). We review the distribution and valuation of property for abuse of discretion. *In re Marriage of Brewer*, 137 Wn.2d 756, 769, 976 P.2d 102 (1999). A court abuses its discretion if its decision is

10

manifestly unreasonable or based on untenable grounds. *In re Marriage of Chandola*, 180 Wn.2d 632, 642, 327 P.3d 644 (2014).

In distributing property at the end of an equity relationship, courts may characterize the property as community or separate by analogy to marital property. *In re Meretricious Relationship of Long & Fregeau*, 158 Wn. App. 919, 929, 244 P.3d 26 (2010) (citing *Connell v. Francisco*, 127 Wn.2d 339, 351, 898 P.2d 831 (1995)). Separate property is that which was owned prior to marriage or acquired afterward by gift, bequest, devise, descent, or inheritance. RCW 26.16.010. Community property is all nonseparate property acquired after marriage by either spouse. RCW 26.16.030.

Here, the trial court determined Vanderzanden's 401(k) was worth $251,944, it was separate property because it was owned prior to the relationship, and noted there may be a community-like interest between March 2013 and December 2014, at which time Vanderzanden stopped making contributions.

The right of domestic partners in their separate property is "'as sacred as is the right in their community property'" and we presume it maintains that character "'until some direct and positive evidence to the contrary is made to appear.'" *In re Estate of Borghi*, 167 Wn.2d 480, 484, 219 P.3d 932 (2009) (quoting *Guye v. Guye*, 63 Wash. 340, 352, 115 P. 731 (1911)). We presume any increase in value of separate property is

11

likewise separate in nature. *Meretricious Relationship of Long*, 158 Wn. App. at 929.

That presumption may be overcome with "'direct and positive evidence that the increase

in value of separate property is attributable to community labor or funds,'" in which case

"'the community may be equitably entitled to reimbursement for [those] contributions.'"

*Id.* (quoting *In re Marriage of Lindemann*, 92 Wn. App. 64, 70, 960 P.2d 966 (1998)).

Detore failed to provide any evidence of community contributions between March

2013 and December 2014. This prevented the trial court from determining what increase

in Vanderzanden's 401(k) was attributable to community contributions. In essence,

Detore's failure to provide evidence amounted to a failure to rebut the presumption that

an increase in separate property value is separate property.

Detore argues that Vanderzanden, as the owner of the 401(k), was in the best

position to present evidence of what contributions were made between March 2013 and

December 2014 and any failure of proof should be resolved against Vanderzanden. We

disagree for two reasons.

First, the presumption that an increase in separate property value is separate

property derives itself from Washington Supreme Court authority. *See In re Marriage of

Elam*, 97 Wn.2d 811, 816, 650 P.2d 213 (1982). We have no authority to set aside

Supreme Court authority. Second, Vanderzanden's 401(k) records were available to

Detore through discovery, so we see no reason to resolve this failure of proof against

Vanderzanden.

*Detore's student loans*

Although the heading in Detore's opening brief mentions her student loans,

nowhere in her argument section does she discuss this issue. An appellant's opening

brief must contain "argument in support of the issues presented for review, together

with citations to legal authority and references to relevant parts of the record."

RAP 10.3(a)(6). Because Detore failed to adequately argue this issue, she waived this

claim. *See Jackson v. Quality Loan Serv. Corp.*, 186 Wn. App. 838, 845, 347 P.3d 487

(2015).

DUE PROCESS VIOLATION

Detore next contends the trial court's refusal to permit closing argument denied her

due process. Specifically, she argues she would have requested a residential credit

deviation in child support that would have likely been granted had she been permitted to

present closing argument. We disagree.

The Fourteenth Amendment to the United States Constitution prohibits states from

depriving any person of life, liberty, or property without due process of law. *Goss v.*

*Lopez*, 419 U.S. 565, 572, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975). "The essence of due

process is that a party in jeopardy of losing a constitutionally protected interest be given a meaningful opportunity to be heard." *Gourley v. Gourley*, 158 Wn.2d 460, 474, 145 P.3d 1185 (2006) (Quinn-Brintnall, J., concurring). The hearing required must be one that is "'appropriate to the nature of the case.'" *Id.* (quoting *Smith v. Org. of Foster Families for Equal. & Reform*, 431 U.S. 816, 848, 97 S. Ct. 2094, 53 L. Ed. 2d 14 (1977)). Unlike many other legal rules, due process is flexible, calling for protections suited for each particular situation. *Id.* at 474-75.

The property interests protected by procedural due process are created and defined by independent sources, such as state law. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). We review alleged constitutional errors de novo. *Post v. City of Tacoma*, 167 Wn.2d 300, 308, 217 P.3d 1179 (2009).

The Sixth Amendment protects a criminal defendant's right to present a closing argument to the jury, although the trial court has broad discretion to limit its duration. *Herring v. New York*, 422 U.S. 853, 856-58, 95 S. Ct. 2550, 45 L. Ed. 2d 593 (1975). But this was not a criminal trial. No categorical due process right to oral argument exists in civil or domestic relations cases. *See In re Dependency of R.L.*, 123 Wn. App. 215, 222, 98 P.3d 75 (2004). And Detore cites no general or local rule that would have required the trial court to allow closing arguments.

14

We disagree that Detore was deprived of a meaningful opportunity to be heard. The trial lasted six days, several witnesses testified, and Detore was able to emphasize whatever points she wished through these witnesses. Also, Detore was afforded the opportunity to raise issues in her presentation papers and in fact she did. This appeal provided her an additional ability to raise these issues.

Moreover, the issues she raises on appeal would not have been mitigated by allowing closing arguments. With respect to Vanderzanden's 401(k), the issue was decided against Detore because she failed to present evidence. One may not present evidence in closing arguments.

With respect to the child support deviation, Detore argued this issue in her presentation papers. The trial court ruled that it would not consider a deviation because it was not earlier requested. But given that neither party requested a shared residential schedule, the trial court probably should have allowed the issue to be raised late. Nevertheless, a trial court has discretion to deny a deviation and this one surely would have. If the trial court had any interest in granting a deviation, it would have asked Vanderzanden to address the issue. Its decision not to ask for a response signals that it would have denied a deviation anyway, likely because Detore had $2.2 million of separate

property. Allowing closing arguments would not have changed this fact. We conclude there was no due process violation.

CONTINUANCE FOR PRESENTATION

Detore contends the trial court's judgment is invalid because her counsel was not afforded five days' notice of the findings and conclusions before presentation, as required by CR 52 and CR 54. We disagree.

CR 52(c) (findings and conclusions) and CR 54(f)(2) (orders and judgments) generally prohibit final pleadings from being signed or entered unless opposing counsel is served with a copy of the proposed pleadings at least five days before presentation. Failure to comply with CR 54(f)(2)'s notice requirement renders the judgment invalid unless no prejudice resulted. *See Burton v. Ascol*, 105 Wn.2d 344, 352, 715 P.2d 110 (1986) (where a party was allowed to appeal issues it wished to raise, no prejudice resulted from defective notice); *City of Spokane v. Landgren*, noted at 127 Wn. App. 1001 (2005) (where city received copies of the first orders, had adequate time to plan and file notice for review, and knew judge's practices, no prejudice resulted).

Detore received proposed orders from opposing counsel on December 2, 2019. The trial court granted Detore's requested continuance of the December 6 presentation to

December 9. This provided Detore adequate notice under the rule. The judgment therefore is not invalid.

Detore also argues she was prejudiced by the court's failure to grant a longer continuance because her new counsel had insufficient time to grapple with the finer property distribution issues. But it was Detore's decision to change counsel after trial and before presentation, which caused this problem. Our review of the record shows that her new counsel performed very well, despite significant time constraints. We doubt the results would have been different had a longer continuance been granted.

ATTORNEY FEES

Vanderzanden asks this court to award her attorney fees on appeal. We decline.

RCW 26.09.140 provides: "Upon any appeal, the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees in addition to statutory costs." In determining whether a fee award is appropriate, we consider the financial resources of the parties and the merits of the issues raised on appeal. *In re Marriage of Fiorito*, 112 Wn. App. 657, 670, 50 P.3d 298 (2002).

The trial court ordered each party to pay her own fees. Its refusal to order payment of fees was based on each party's financial strength. For the same reason and because the appeal has sufficient merit, we decline to award attorney fees.[2]

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____        _____
Pennell, C.J.                          Staab, J.

_____

[2] Detore filed a financial declaration two months after the case was considered on the merits. We do not consider this declaration to be a request for an award of attorney fees on appeal. Such a request must be explicit in the opening brief and timely. RAP 18.1(b), (c). Detore did not comply with either requirement.