[No. 42660-5-I. Division One. December 21, 1998.]

DENNIS M. KOHER, *Appellant*, v. MARY L. MORGAN, *Respondent*.

*Charles W. Sandell* of *Malling & Sandell*; and *Douglass*

A. *North* of *Maltman, Reed, North, Ahrens, & Malnati, P.S.*, for appellant.

*Mark D. Olson*, for respondent.

COLEMAN, J. — Dennis Koher appeals the division of property acquired during his meretricious relationship with Mary Morgan, contending that the trial court erred in applying the commingling rule to profits from his separate business. Koher argues that Morgan does not have an ownership interest in the property he acquired during their relationship or in its increased value after their separation. We find that the trial court correctly applied a community-property-like presumption to the couple's property and did not abuse its discretion in subjecting the property, including its increase in value after separation, to a just and equitable distribution. We affirm.

## FACTS

The parties stipulated before trial that they lived together in a meretricious relationship from January 1988 to May 1995. Koher entered the relationship owning the Sea Island Sand & Gravel and San Juan Concrete Pumping companies, and Morgan was self-employed as a real estate broker. During the relationship, Koher ran Sea Island and San Juan Concrete as one business. Koher testified that he paid himself a salary for working at his companies and deposited both his wages and the profits from his businesses into his personal checking account. The court found that Koher paid himself an average of $44,440 per year during the relationship, a total of $355,516. Koher gave Morgan from $5,500 to $14,471 each year for their living

expenses, approximately $80,000 over the course of their relationship. With the remainder of his salary and the companies' profits, Koher rebuilt his businesses and invested in island properties and retirement accounts.

The trial court determined that many of the assets acquired during the relationship would have been characterized as community property if the couple had been married and thus should be subject to a just and equitable distribution. The court found that Koher had drawn an artificially low salary during the relationship and had undercompensated Morgan for relationship expenses. Because Koher had commingled his earned income with the profits from his businesses and had used the commingled funds to acquire property during the relationship, the court concluded that Koher could not establish his separate property interest in his accounts and real property investments. The court awarded most of the couple's property to Koher and offset the award with a money judgment for Morgan. To calculate the value of the parties' awards, the court used the value of the assets at trial.

## DISCUSSION

■ We review the distribution of property at the end of a meretricious relationship for abuse of discretion. *In re Meretricious Relationship of Sutton*, 85 Wn. App. 487, 491, 933 P.2d 1069, *review denied*, 133 Wn.2d 1006, 943 P.2d 664 (1997), *citing In re Marriage of Konzen*, 103 Wn.2d 470, 478, 693 P.2d 97 (1985).

■ The parties have stipulated that they lived together in a meretricious relationship, the term used by our courts to describe a stable, marriage-like relationship where the parties cohabit knowing that they are not legally married. *Connell v. Francisco*, 127 Wn.2d 339, 346, 898 P.2d 831 (1995) (citing *In re Marriage of Lindsey*, 101 Wn.2d 299, 304, 678 P.2d 328 (1984)). In *Connell*, the court concluded that although a meretricious relationship does not create a marital community, the property a couple has earned through their efforts may be subject to a just and equitable

distribution to prevent one party from being unjustly enriched at the end of the relationship.[1] *Connell*, 127 Wn.2d at 349. The court thus held that "income and property acquired during a meretricious relationship should be characterized in a similar manner as income and property acquired during marriage." *Connell*, 127 Wn.2d at 351.

Under *Connell*, Koher's earnings during his relationship with Morgan are analogous to the earnings of a spouse during marriage, which are traditionally characterized as community property. *See* Harry M. Cross, *The Community Property Law in Washington*, 61 WASH. L. REV. 13, 30 & n.84 (1986). We have recently held that under *Connell*, a party's labor is an asset of the meretricious relationship and any earnings during the relationship similarly belong to the marriage-like community. *In re Marriage of Lindemann*, 92 Wn. App. 64, 72, 960 P.2d 966 (1998). Here, the trial court determined that the relationship had not received adequate compensation for Koher's work because Koher had taken an artificially low salary. Koher testified that he had worked hard during the relationship to rebuild his businesses and that they were profitable because he was able to buy cheaper, older equipment which he repaired himself or trained others to repair. The trial court determined that given the profits generated by the businesses over the course of the relationship, Koher had undercompensated himself by approximately $196,700.

Out of the $355,516 Koher drew as wages during the relationship, Koher gave approximately $80,000 to Morgan for relationship expenses. With the remainder of his salary and profits, Koher acquired property and equipment and funded other investments. Under *Connell*, courts apply a community-property-like presumption to property acquired during a meretricious relationship regardless of how title was taken. *Connell*, 127 Wn.2d at 351. A party asserting his separate interest may rebut the presumption

---

[1]In contrast, the assets that would be characterized as separate property are not subject to distribution because the parties chose not to get married. *Connell*, 127 Wn.2d at 350.

with evidence that the assets were acquired with funds that would have been characterized as his separate property if he had been married. *See Connell*, 127 Wn.2d at 352. Although Koher had used both his salary and separate business profits to acquire these assets, he could not identify the type of funds used for each acquisition. Because Koher had not taken a reasonable salary during the relationship, the court found that he had commingled his profits with the income owned by the meretricious relationship as compensation for his labor and had continuously intermixed large sums of separate and relationship income in his personal and business accounts.

Koher argues that the court improperly applied the commingling rule to his accumulated income and profits, contending that the court should have found only a right to reimbursement for the earnings he had foregone. Under *Lindsey* and *Connell*, the court has a duty to make a just and equitable distribution of all property considered to be owned by both parties in a meretricious relationship. *Connell*, 127 Wn.2d at 351, *citing Lindsey*, 101 Wn.2d at 307. Koher had indiscriminately used relationship funds for his investments and was unable to trace any portion of the disputed assets to his separate profits. In these circumstances, we find that it was not an abuse of the trial court's discretion to conclude that it was more appropriate and fair to find that the assets Koher had acquired were subject to distribution, applying by analogy "the basic presumption that an asset on hand during marriage is community property[.]" Cross, *supra*, at 56; *see also Lindemann*, 92 Wn. App. at 79 (affirming the trial court's application of the commingling rule to funds deposited in a joint account during a meretricious relationship).

Koher also argues that the trial court's application of the presumption is inequitable because it retroactively recharacterizes his profits and acquisitions, which he contends were his separate assets during the relationship. We recently rejected the claim that a party's labor during his meretricious relationship was a separate contribution to a

business he owned before the relationship began, stating that "labor performed during a marital or quasi-marital relationship has a community character from its inception. In our community property system, there is no basis for allocating one party's labor to a separate property account." *Lindemann*, 92 Wn. App. at 73. Here, the parties' ownership interests in Koher's income accrued contemporaneously, as it was earned. Similarly, the community-property-like status of the couple's investments became fixed when Koher acquired the assets with funds that included his actual earnings, his business profits, and earnings he had foregone. *See In re Estate of Binge*, 5 Wn.2d 446, 484, 105 P.2d 689 (1940) ("It is the rule in this state that the status of property, whether real or personal, becomes fixed as of the date of its purchase or acquisition[.]"). We conclude that the trial court did not abuse its discretion in finding that Morgan had an ownership interest in the property Koher acquired during their relationship.

 Koher next argues that the trial court erred in valuing the couple's assets at the time of trial, rather than at the time of separation. Our Supreme Court has held that the dissolution statutes give courts in divorce proceedings broad discretion to pick an evaluation date that is equitable. *Lucker v. Lucker*, 71 Wn.2d 165, 167-68, 426 P.2d 981 (1967) (discussing former RCW 26.08.110). Koher argues that this discretion is not appropriate in a meretricious relationship and that courts may not consider the increased value of assets after separation, citing *Sutton*. In *Sutton*, Division Three affirmed the distribution of a meretricious couple's assets in proportion to each party's contribution to the couple's annual income, noting that the cases require an equitable, not equal, division of property and that the laws governing the distribution of marital property do not apply directly to meretricious relationships. *Sutton*, 85 Wn. App. at 491-92. However, the court did not limit the judgment to the value of the couple's property at separation, but in fact affirmed the trial court's consideration of one party's use of the property after the relationship had ended. *Sutton*, 85 Wn. App. at 493.

In asserting a separate interest in the assets' increased value, Koher apparently relies upon his previous arguments against common ownership of the properties. However, we have already determined that the disputed assets belonged to the relationship. Therefore, the increase in the value of the assets after separation was not Koher's separate property, but was properly characterized by the trial court as relationship property. We conclude that the court's use of the assets' value at trial did not effect a distribution of Koher's separate property and the court did not abuse its discretion in distributing the increase in the value of the assets after separation.

Koher also argues that he substantially improved the property on Sunset Mountain after the parties separated and that the value of improvements on the property at trial reflected his separate efforts and should not have been before the court for distribution. Koher purchased the property for $175,000 two months before the parties separated. At trial, the court determined that the property was worth $345,000. Koher argues that he is entitled to the increase in value attributable to improvements on the property, which an appraiser testified was $120,000. Koher had testified that although the property had been improved prior to separation, its value had not increased or had increased by only $8,000, the amount Koher had paid to put in a well.

The court awarded Koher a right to reimbursement for the cost of his postseparation improvements, but did not award the property's increase in value. The right to reimbursement is based on equitable principles. Cross, *supra*, at 68. Since Koher occupied the property with his son for almost two years after the parties separated, he apparently had already received some benefit from his work through his use of the improved asset. Thus, we find that the trial court did not abuse its discretion in finding that Koher was entitled to reimbursement only for the cost of his postseparation improvements.

On appeal, both parties seek compensatory damages or

sanctions under RAP 10.7, RAP 18.9, or CR 11, each party arguing that the other side did not present a fair statement of the facts or raised frivolous arguments for the purposes of delay and harassment. We reject these arguments. The parties have attempted to summarize a complex factual record and have presented good faith arguments in an area of the law that is not well settled. Therefore, an award of compensatory damages or sanctions under these provisions are not appropriate.

Affirmed.

Cox and ELLINGTON, JJ., concur.

Review denied at 137 Wn.2d 1035 (1999).