

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | |
| | ) | No.  37508-1-III |
| ABIGAIL FRANCES SHEPARD, | ) | |
| | ) | |
| Appellant/Cross Respondent, | ) | |
| | ) | |
| and | ) | UNPUBLISHED OPINION |
| | ) | |
| SAMUEL ROBERT SHEPARD, | ) | |
| | ) | |
| Respondent/Cross Appellant. | ) | |
| | ) | |

STAAB, J. — Abigail Dussell (formerly known as Shepard) raises three issues in

her appeal of the superior court's final dissolution orders.  First, she challenges the

parenting plan's designation of Samuel Shepard as the primary parent and the court's

imposition of statutory restrictions on Dussell's decision-making and ability to discuss

matters with the parties' minor child, E.S.,[1] along with the court's residential

---

[1] To protect the privacy interests of the minor, we use his initials throughout this opinion.  General Order of Division III, *In Re the Use of Initials or Pseudonyms for Child Victims or Child Witnesses* (Wash. Ct. App. June 18, 2012), http://www.courts.wa.gov /appellate_trial_courts/?fa=atc.genorders_orddisp&ordnumber=2012_001&div=III.

schedule. Second, she challenges the trial court's valuation of the parties' residence, specifically the date of valuation as the date of separation. Third, Dussell challenges the trial court's award of attorney fees against her for intransigence. Shepard cross appeals the trial court's failure to provide a value to Dussell's online business for purposes of property distribution and child support as well as the amount of attorney fees awarded to him.

We find that the trial court did not abuse its discretion and affirm.

BACKGROUND

The parties married on September 2, 2011. At the time, they were both employed. After the parties' child, E.S., was born in 2012, Dussell quit work to stay home. During that time, Dussell developed an online business and occasionally worked part-time while Shepard worked several nights as a volunteer fire fighter. In 2015, Dussell began working part-time and attending nursing school. While the parties agreed that Dussell was E.S.'s primary caretaker, they disagreed on Shepard's involvement with his care when he was not working.

The parties separated on June 11, 2016. Dussell had planned a trip to see her family in New Hampshire, but dissolution papers were filed while she was gone, and she remained in New Hampshire. Shepard obtained an order requiring Dussell to return to Spokane with E.S. by a set date, and when she did not return, Shepard moved for contempt. In response to the motion for contempt, Dussell testified via declaration that "I

2

have not been able to work for the last five months and have received no financial help from my husband" and, "I literally have no money so buying tickets back was difficult for me financially since my husband was the primary breadwinner." Report of Proceedings (RP) at 16-17. Nevertheless, at trial, it was revealed that the balance of Dussell's New Hampshire bank account on November 15, 2016, was $11,472.38. Her October 14, 2016 statement reflected a beginning balance of $12,463.32.

The dissolution case was contentious and remained pending for more than three years. E.S. was four years old when the parties separated and seven years old at the time of trial. When E.S. started kindergarten, he displayed significant behavioral issues and was eventually placed in the BEST program. During the dissolution, E.S. was diagnosed with attention deficit hyperactivity disorder, oppositional defiance disorder, unspecified anxiety, and child affected by parental relationship distress.

Shortly after returning to Spokane, Dussell and her family retrieved personal items from the family home. Unhappy with the property that Shepard had set aside for her, Dussell returned a box spring and two television sets she said were broken and left them in the front yard even though Shepard was home at the time. E.S. was supposed to be in school during this incident but was with Dussell and witnessed the incident.

Over the next three years, while the dissolution action was pending, Dussell made or initiated numerous abuse allegations against Shepard that were determined to be untrue

3

and unfounded. In response to one allegation of abuse, the court appointed a guardian ad litem (GAL) and ordered each party to submit to a urinalysis test for drugs.

Based mainly on Dussell's allegations, discovery was contentious and protracted in this case. Dussell resisted providing financial information about her bank account and resisted providing information about her prescriptions after her drug test returned positive for benzodiazepine. Dussell issued multiple subpoenas for depositions after the discovery cut off and then canceled the depositions before they occurred. The GAL was subpoenaed more than three times for depositions that never occurred. The GAL was also required to seek court instructions after Dussell served her with interrogatories and requests for production (even though she was not a party). Dussell also issued a subpoena for Shepard's dissolution attorney, necessitating her own attorney.

After determining that one of Dussell's abuse allegations was unsupported, the court ordered Dussell to submit to a psychological evaluation. Several weeks later, Child Protective Services (CPS) received a new referral, alleging that Shepard was abusing E.S. CPS later determined that Dussell was coaching E.S. to make these allegations.

From November 2016 to February 2019, the temporary parenting plan provided a residential schedule split relatively equal among the parents. In February 2019, after a revision hearing on Shepard's motion to modify the temporary order, the court changed the schedule and placed E.S. primarily with Shepard. Dussell was allowed residential

time from Wednesday after school until 7:00 p.m. and every weekend except for the fourth weekend of each month.

Meanwhile, E.S. was referred to the BEST program through his school due to ongoing behavioral problems. The trial court found that the BEST program therapist indicated that E.S. needed consistency. The court noted that the program is an integrated and holistic approach to behavioral issues and mental health that requires family participation. While the court found that Shepard attended every single BEST session, Dussell attended one.

Shepard testified that E.S.'s behavioral issues dramatically worsened during the 2018/2019 school year. He provided further testimony about his contacts with school staff and his approach to addressing behavioral issues in his home, which he defined as mostly centered around obstinacy.

In April 2019 the GAL filed a supplemental report indicating Shepard was working closely with the school to address E.S.'s behavioral issues. The report identified dishonest reports made by Dussell about her involvement with the school (dishonest claims she was regularly e-mailing with the teacher, frequent contact with the school psychologist, principal, and vice-principal, and being involved in the classroom). It also indicated Dussell was becoming emotional in front of E.S. The school reported Shepard as being "receptive" and being able to "appropriately talk with [E.S.] about the incident and appears to have home consequences for the issues of that day." Clerk's Papers at 94.

At the same time, Dussell "becomes very emotional in front of [E.S.] and worries about her parenting while turning the consequences for [E.S.] into being fun time when they get home."

After a trial on the evidence, the court found that Dussell was not credible. Based on its finding that Dussell engaged in abusive use of conflict, the court adopted Shepard's parenting plan, designating him as primary parent, and restricting Dussell's decision-making and ability to communicate with E.S. about certain topics such as the dissolution, abuse allegations, or Shepard.

The court also divided the parties' property and liabilities. The court awarded the family's home to Shepard, and determined its value and mortgage balance as of the date of separation. While awarding Dussell an equalization payment of $18,767.44, the court also imposed attorney fees against Dussell for intransigence in the amount of her transfer payment and held that the two should offset each other.

Both parties appeal.

ANALYSIS

A. PARENTING PLAN AND LIMITATIONS

Dussell assigns error to the trial court's parenting plan. She challenges the designation of Shepard as the primary parent and sole decision-maker as well as the residential schedule and other statutory restrictions. She also challenges the trial court's reliance on the GAL report and testimony, arguing that the GAL was biased.

We review a trial court's final dissolution orders for abuse of discretion. *In re Marriage of Katare*, 175 Wn.2d 23, 35, 283 P.3d 546 (2012); *In re Marriage of Rockwell*, 141 Wn. App. 235, 242-43, 170 P.3d 572 (2007). Judicial discretion "means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). "Where the decision or order of the trial court is a matter of discretion, it will not be disturbed on review except on a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *Id.* "[W]e give great deference to the trial court's determination: even if we disagree with the trial court's ultimate decision, we do not reverse that decision unless it falls outside the range of acceptable choices because it is manifestly unreasonable, rests on facts unsupported by the record, or was reached by applying the wrong legal standard." *State v. Curry*, 191 Wn.2d 475, 484, 423 P.3d 179 (2018) (citing *State v. Dye*, 178 Wn.2d 541, 548, 309 P.3d 1192 (2013)).

Dussell does not assign error to any of the trial court's findings of facts; thus, they are verities on appeal. See RAP 10.3(g); *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994) (unchallenged findings constitute verities on appeal). Regardless, the court's findings are supported by substantial evidence.

Dussell articulates the correct standard of review on appeal and acknowledges that the trial court considered the correct statutory factors in crafting the parenting plan but

7

argues that the trial court failed to weigh competing evidence accurately. Throughout her briefing, she contends the trial court ignored her testimony and evidence in finding particular facts. She meticulously goes through each statutory factor and the facts supporting restrictions and points to contrary evidence to support her version of the facts. She also argues that the trial court erred in giving greater weight to the GAL testimony because the GAL was biased against Dussell. Where Dussell claims the court "ignored" her testimony and evidence, the reality is that the court found Dussell not credible and assigned a low weight to her evidence. On the other hand, the court placed great weight on other evidence including the GAL's report and testimony.

As an appellate court, we do not reweigh the evidence. *Harrison Mem'l Hosp. v. Gagnon*, 110 Wn. App. 475, 485, 40 P.3d 1221 (2002). Instead, following a bench trial, we review the record in a light most favorable to the prevailing party to determine if substantial evidence supports the trial court's findings of fact and, if so, whether the findings support the conclusions of law. *Id*. at 484-85. Allegations of bias are related to a witness's credibility. *State v. Post*, 59 Wn. App. 389, 407, 797 P.2d 1160 (1990). Credibility determinations are solely for the trier of fact and are not reviewable on appeal. *Morse v. Antonellis*, 149 Wn.2d 572, 574, 70 P.3d 125 (2003).

Dussell contends that the trial court made four preliminary findings to support its ultimate finding that Dussell engaged in abusive use of conflict. She contends that these findings were not supported by substantial evidence: (1) that Dussell made false

allegations of abuse, (2) coached E.S. to make false allegations, (3) made false allegations to her physician in New Hampshire, and (4) allowed E.S. to witness her and her family throwing property on Shepard's front yard.

After considering significant evidence, the trial court provided an oral ruling and written findings. The trial court considered substantial evidence before entering the final parenting plan and placing restrictions on Dussell. The evidence included the testimony of the parties and the GAL. It also included all of the CPS records, all of the BEST program records, E.S.'s psychological evaluation, Dussell's psychological evaluation, E.S.'s school records, Dussell's medical records, E.S.'s medical records, urinalysis results, polygraph results of Shepard and his girlfriend, social media posts, contradictory declarations of Dussell, and communications between the parties. The court found that each allegation of abuse reported or initiated by Dussell was determined by CPS to be either unfounded or specifically did not occur. On appeal, Dussell's challenges to this evidence go to weight and credibility.

Dussell argues that there is insufficient evidence to support the court's finding that she made false reports of abuse or coached E.S, pointing out that in one instance, E.S. displayed bruises even though CPS could not determine how he was bruised. However, as Shepard points out, CPS also determined that "the use of physical discipline by the father against [E.S.] did not occur." Respondent/Cross Appellant's Br. at 14. Moreover, this was only one incident. The court found that Dussell's reports of domestic violence

9

and child abuse to her physician in New Hampshire were not accurate. Dussell reported that Shepard had a drinking and drug problem, and while Shepard passed his drug test, Dussell's came back positive for a substance that she never verified with a valid prescription. A report of abuse was made in April 2019, and CPS later determined that E.S. had been coached to make the allegation. And while Dussell testified that E.S. could not see the front-yard incident, the court found she was not credible and the circumstantial evidence suggested otherwise.

Dussell also argues that the trial court's decision to impose restrictions was not supported by its findings because the court failed to identify how the restriction would address Dussell's short-coming, citing *In re Marriage of Chandola*, 180 Wn.2d 632, 327 P.3d 644 (2014). In *Chandola*, the Supreme Court held that restrictions imposed under RCW 26.09.191(3)(g) must be "reasonably calculated to prevent relatively severe physical, mental, or emotional harm to a child." *Id*. at 636. The court also stated that the imposition of limiting factors under RCW 26.09.191(3)(g) must be supported by substantial evidence "'that a danger of . . . damage exists.'" *Id*. at 645 (emphasis omitted) (alteration in original) (internal quotation marks omitted) (quoting *Katare*, 175 Wn.2d at 36).

The trial court made specific findings that Dussell's abusive use of conflict, including making false allegations, coaching E.S., and discussing the conflict with E.S., caused damage to E.S. Specifically, the court noted the correlation between Dussell's

10

action and E.S.'s behavioral issues at home and at school. While Dussell contends that any bad behavior on her part only occurred during the custody dispute, the custody dispute went on for more than three years and was representative of Dussell's actions and intentions.

Finally, Dussell contends that the restrictions on her ability to discuss issues with E.S. are unfair and prevent her from discussing legitimate concerns. In light of Dussell's history of discussing conflicts with E.S., making false allegations, and coaching E.S., the restrictions imposed by the court are supported by the evidence and the trial court's findings.

To be clear, the residential schedule was based not only on the court's finding of abusive use of conflict, but also on the best interests of E.S. after considering all of the statutory factors in RCW 26.09.187. In reaching its decision, the court carefully applied its findings to each of the statutory factors in RCW 26.09.187. The court noted that E.S. has special needs that require consistency and stability. The court found that Shepard provided more consistency and stability than Dussell, who often rewarded E.S.'s bad behavior. While the court found Dussell to be the primary parent before the parties separated, the court also noted that since separation, Shepard had been more involved, attending every BEST session while Dussell attended one. Where Dussell argues contrary evidence on these points, she is asking us to reweigh evidence.

Since the trial court's findings are supported by substantial evidence, it did not abuse its discretion in designating Shepard as primary residential parent and imposing restrictions on Dussell.

B.  VALUE OF HOME AT SEPARATION

Dussell contends that the trial court erred in valuing the parties' home as of the date of separation instead of the date of trial.  Trial courts have broad discretion in choosing the valuation date for community assets.  *Koher v. Morgan*, 93 Wn. App 398, 404, 968 P.2d 920 (1998).  Our Supreme Court has held that the dissolution statutes give courts in divorce proceedings broad discretion to pick an evaluation date that is equitable. *Id*. (citing *Lucker v. Lucker*, 71 Wn.2d 165, 167, 426 P.2d 981 (1967)).  Here, the trial court chose the date of valuation of the home as the date of separation.

Dussell argues that the trial court abused its discretion because Shepard had sole use of the home while the dissolution was pending for almost four years.  The court noted that during that time Shepard maintained the home, paid the mortgage, and put a new roof on the home.  Given the evidence presented, the trial court had discretion to pick the date of valuation as the date of separation, the date of trial, or some date in between.  *See Id*.  While Dussell disagrees with the trial court's choice, it was not an abuse of discretion.

C.  ATTORNEY FEES AT TRIAL

Both parties appeal the trial court's imposition of attorney fees against Dussell. Dussell argues that the evidence did not support the trial court's finding that she was intransigent.

After dividing up the parties' assets and liabilities, the court found that Dussell was entitled to a transfer payment for her equity in the parties' home.  The court also found that Dussell's intransigence and subterfuge permeated the entire proceedings and caused Shepard to incur unnecessary fees.  The court's written findings of fact initially ordered Dussell to pay Shepard's attorney fees in the amount of $42,254.69.  However, in a subsequent finding, the court found that while Dussell was otherwise entitled to an equalization payment of $18,767.44, the entire transfer payment would be applied toward Dussell's obligation to pay Shepard's attorney fees in the same amount.  Preprinted language indicating that the award of fees was $42,254.69 was crossed out, and the judge wrote that the amount of fees imposed against Dussell was $18,767.44.

While a trial court shall make a just and equitable division of property without regard to marital misconduct, attorney fees may be awarded upon a finding of intransigence.  RCW 26.09.080; *In re Marriage of Foley*, 84 Wn. App. 839, 846, 930 P.2d 929 (1997).  Findings of intransigence are reviewed for an abuse of discretion.  *Id*.

Dussell claims she was not intransigent, and it was Shepard who brought unnecessary motions and drove up costs.  The record is replete with instances of Dussell

13

making false allegations, providing the court with false information, changing her testimony, resisting discovery of relevant evidence, and ignoring discovery cutoffs. The record supports the trial court's finding of intransigence, and the finding supports the court's award of attorney fees.

   D.  SHEPARD'S CROSS APPEAL

Shepard cross appealed the trial court's failure to place a value on Dussell's online video business for purposes of asset allocation and child support. He also challenged the amount of attorney fees imposed on Dussell as inadequate. Shepard fails to provide citation to authority or meaningful analysis as to the online business. We consider specific issues raised in the briefs that include citations to legal authority and references to the relevant portions of the record. RAP 10.3(a)(6). We need not consider arguments that are unsupported by meaningful analysis or authority. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

Turning to the award of attorney fees, Shepard references findings made by the trial court in a separate letter ruling dated March 27, 2020. Shepard does not cite to the record when referencing this letter ruling, and we did not find a letter opinion in the record. As a cross appellant, Shepard is responsible for designating those portions of the record he believes are relevant to the issues he is raising. RAP 9.6; *State v. Holbrook*, 66 Wn.2d 278, 280, 401 P.2d 971 (1965) (burden is on party appealing to furnish sufficient statement of facts to apprise the court of facts on which assignments of error are

predicated). Since the record is otherwise sufficient to support the amount of attorney fees imposed on Dussell, we find no abuse of discretion.

### E. ATTORNEY FEES ON APPEAL

Shepard requests attorney fees on appeal under RAP 18.9(a), alleging that Dussell's appeal is frivolous. "The appellate court on its own initiative or on motion of a party may order a party or counsel, or a court reporter or authorized transcriptionist preparing a verbatim report of proceedings, who uses these rules for the purpose of delay, files a frivolous appeal, or fails to comply with these rules to pay terms or compensatory damages to any other party who has been harmed by the delay or the failure to comply or to pay sanctions to the court." RAP 18.9(a). "Appropriate sanctions may include, as compensatory damages, an award of attorney fees and costs to the opposing party." *Yurtis v. Phipps*, 143 Wn. App. 680, 696, 181 P.3d 849 (2008). "'A frivolous action is one that cannot be supported by any rational argument on the law or facts.'" *Id.* at 697 (quoting *Rhinehart v. Seattle Times, Inc.*, 59 Wn. App. 332, 340, 798 P.2d 1155 (1990)). An appeal is not frivolous if it presents debatable issues upon which reasonable minds might differ. *Holiday v. City of Moses Lake*, 157 Wn. App. 347, 356, 236 P.3d 981 (2010). Courts resolve all doubts about whether an appeal is frivolous in favor of the appellant. *Wood v. Thurston County*, 117 Wn. App. 22, 29, 68 P.3d 1084 (2003).

While Dussell does not prevail on appeal, we do not find her appeal to be frivolous and exercise our discretion in not awarding attorney fees on appeal under RAP 18.9(a).

No. 37508-1-III
*In re Marriage of Shepard*


Affirmed

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Staab, J.

WE CONCUR:


_____
Lawrence-Berrey, A.C.J.


_____
Fearing, J.


16