**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| MEHRAN TAVAKOLI, | No. 88030-6-I |
| Appellant, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| SREYA VUTH, | |
| Respondent. | |

FELDMAN, J.— Mehran Tavakoli appeals the trial court's orders distributing property, awarding spousal support, and awarding attorney fees in this dissolution proceeding. Because Tavakoli fails to establish that the trial court abused its broad discretion with respect to any of its rulings, we affirm.

I

Sreya Vuth and Mehran Tavakoli met in Cambodia, where Vuth is from. Vuth, 23 years old at the time, was "selling lotions" and singing in a restaurant, and Tavakoli, then 50 years old and a physician for decades, frequently travelled to Cambodia on "medical mission" trips. Although Vuth spoke "almost no English" at the time, the two began "dating" and Tavakoli eventually proposed marriage, in part, because he "felt really sorry for her" and "wanted to give her a better life." Tavakoli arranged for Vuth to obtain a "fiancé visa" and brought her to his Vancouver, Washington home in April

2019. Days before the parties' July 3, 2019 wedding in California, the parties signed a prenuptial agreement drafted by an attorney retained by Tavakoli because he felt he had "amassed too much" and "didn't want to lose it for one indiscretion."

Eleven months later, on June 1, 2020, the parties separated after Tavakoli was arrested and charged with domestic violence offenses. The parties had no children together. The Clark County Superior Court entered a 10-year no contact order protecting Vuth. In July 2020, Tavakoli filed a petition to dissolve the marriage. Over a year later, Vuth received authorization to work and a social security card. Shortly before trial, Tavakoli resolved the criminal charges against him by entering an *Alford/Newton*[1] plea to assault in the third degree, designated as a crime of domestic violence.[2]

At the three-day trial on Tavakoli's petition, the court considered the testimony of nine witnesses, including the parties, and more than 50 exhibits. Tavakoli argued that the parties' prenuptial agreement was "fully enforceable" and, in accordance with that agreement, there should be no award of spousal support and all assets he owned at the time of the marriage should be allocated to him as his separate property. The court determined that the prenuptial agreement was both procedurally and substantively unfair and unenforceable.

Having so ruled, the court identified and distributed the parties' assets. Tavakoli's separate assets included real property, a medical practice, and multiple

---

[1] *State v. Newton*, 87 Wn.2d 363, 552 P.2d 682 (1976) (adopting the holding of *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), which allows a plea whereby an accused does not technically acknowledge guilt, but concedes the sufficiency of the evidence to support a conviction).
[2] In exchange for his plea, the State dismissed charges of rape in the second degree, intimidating a witness, assault in the second degree (two counts), assault in the fourth degree (two counts), and harassment—all designated as crimes of domestic violence.

investment and financial accounts whereas Vuth's primary separate assets were a residential property and bank account in Cambodia. While the court did not allocate any of Tavakoli's separate assets to Vuth, the court noted a "huge disparity between the separate property available to each party post-dissolution" and that Vuth is in a "new country with little formal education."

Based on the foregoing evidence, the court concluded that a transfer payment of $30,000 was required to achieve a fair and equitable distribution of property. The trial court also ordered spousal support of $18,000 to be paid in installments over three months to enable Vuth to attend cosmetology school and secure employment commensurate with her prior work history, skills, and interests. The court granted Vuth's request for a lifetime restraining order against Tavakoli.

Tavakoli filed a motion for reconsideration. The trial court denied the motion and granted Vuth's request for $2,640 in attorney fees incurred in responding to the motion. Tavakoli appeals.

II

A.      Distribution of Property

Tavakoli claims the trial court abused its discretion in ordering the distribution of $30,000 to Vuth by failing to (1) identify, assign value, and allocate community property, (2) assign value to each separate property asset and determine the overall value of each party's separate property, (3) determine his ownership interest in real property designated as separate property and awarded to him, (4) include jewelry received before marriage as Vuth's separate property, (5) consider appreciation of assets, (6) consider Tavakoli's future financial needs in retirement, the support

awarded to Vuth in pretrial orders, and his expenditures on attorney fees in the criminal and family law matters, (7) consider that Vuth has "35 years of earning capacity," work experience, "valuable" English language skills, and could generate income from her property in Cambodia or on TikTok, and (8) account for Vuth's conversion of property that he left at the marital residence. We disagree with these arguments.

The trial court has broad discretion in distributing marital property. *In re Marriage of Rockwell*, 141 Wn. App. 235, 242, 170 P.3d 572 (2007). RCW 26.09.080 guides the trial court's distribution of property and provides that a trial court must dispose of property in a manner that is "just and equitable" after considering (1) the nature and extent of the community property, (2) the nature and extent of the separate property, (3) the duration of the marriage, and (4) the economic circumstances of each spouse. On review of dissolution proceedings, our supreme court has observed that "[t]he emotional and financial interests affected by such decisions are best served by finality." *In re Marriage of Landry*, 103 Wn.2d 807, 809, 699 P.2d 214 (1985). Accordingly, "[t]he spouse who challenges such decisions bears the heavy burden of showing a manifest abuse of discretion on the part of the trial court." *Id*. "A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard; it is based on untenable grounds if the factual findings are unsupported by the record; [and] it is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard." *In re Marriage of Littlefield*, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997). "'We will not substitute our judgment for the trial court's, weigh the evidence, or adjudge witness credibility.'" *DeVogel v. Padilla*, 22 Wn. App. 2d 39,

48, 509 P.3d 832 (2022) (quoting *In re Marriage of Greene*, 97 Wn. App. 708, 714, 986 P.2d 144 (1999)).

Tavakoli's arguments regarding the distribution of property are unpersuasive for a number of reasons. Contrary to Tavakoli's argument that the trial court failed to properly identify, assign value, and allocate community property, the court did not conclude that community property of any significant value remained at the time of trial, more than three years after the parties separated. Tavakoli consistently maintained that any such community property had no significant value at the time of trial, and Vuth did not argue otherwise. The court's findings merely recognize that the marital community acquired income and some personal property between July 2019 and May 2020. But consistent with the evidence and the parties' positions, as there was no community property available to distribute, the decree does not list or allocate such assets to either party.[3] The trial court did not thereby abuse its discretion. *See In re Marriage of Hadley*, 88 Wn.2d 649, 656-57, 565 P.2d 790 (1977) (no error in failure to value assets of insignificant value not taken into account in the property division).

Tavakoli's claim of error related to the failure to assign specific values to all assets also fails because he did not propose a date for valuation, nor does it appear that he presented evidence to establish the value of all assets as of a specific date. Contrary to Tavakoli's suggestion, valuation of assets at the time of dissolution trial is not "dictated" by RCW 26.09.080. Trial courts have wide discretion under the statute to value assets as of the date of separation, the date of trial, or somewhere in between.

---

[3] Likewise, the trial court's failure to identify as an asset and assign value to Vuth's wedding ring does not undermine the property distribution where there was no dispute as to characterization or purchase price and nothing to suggest that the asset impacted the court's evaluation of the parties' relative financial positions. *See Hadley*, 88 Wn.2d at 656-57.

*See, e.g., Lucker v. Lucker*, 71 Wn.2d 165, 168, 426 P.2d 981 (1967) ("If the property is to be valued as of the date of trial rather than the date of separation, appreciation as well as depreciation in value should be considered in making an equitable division."); *Koher v. Morgan*, 93 Wn. App. 398, 404-05, 968 P.2d 920 (1998) (no abuse of discretion to value assets following the end of a committed intimate relationship "at the time of trial, rather than at the time of separation"). Moreover, Tavakoli's testimony primarily concerned the circumstances surrounding the prenuptial agreement and allegations of domestic violence against him. He provided no details about his medical business and did not retain an expert to value the business. The record designated for appellate review, including a limited number of trial exhibits, does not include any evidence from which the trial court could have determined the value of Tavakoli's accounts, real property, or business assets at the time of separation or trial.[4]

Tavakoli appears to suggest that, absent assigned values to all assets, the court had no basis to conclude that the parties' relative economic positions warranted a transfer of $30,000 to Vuth. That is incorrect, as the record amply supports the court's finding of a patent disparity in wealth and prospects. Evidence in the record supports the finding that Vuth had significant barriers to obtaining employment that paid higher than minimum wage and no ability to access or liquidate her primary assets in Cambodia. Vuth's only other listed asset was a bank account established after the parties separated. The evidence in the record supports the conclusion that

---

[4] To the extent that Tavakoli's challenge to the finding of a disparity in the separate assets available to each party relies on trial exhibits not designated as part of the appellate record, we do not consider those aspects of his argument. *See Rhinevault v. Rhinevault*, 91 Wn. App. 688, 692, 959 P.2d 687 (1998) (appellant bears the burden to perfect the record on appeal "so the reviewing court has before it all the evidence relevant to deciding the issues").

this account had no significant positive balance since Vuth used the funds deposited in that account to secure and furnish her housing and her expenses exceeded her income.

In contrast, the assets Tavakoli listed as his separate property in an attachment to the prenuptial agreement included two bank accounts, three investment accounts, three parcels of real property, a medical business and all of its assets, interest in a vehicle, and a precious metal company account. Tavakoli listed values for only four of those assets and did not include his business and real property, which are presumably the most valuable assets. Nevertheless, Tavakoli conceded that those accounts had a value of over $120,000, and that his business yielded a profit of approximately $150,000 per year. There was no evidence to suggest that Tavakoli's premarital assets no longer existed (although he testified that his investment accounts were held by a different entity following a merger), and he points to no evidence establishing the value of those assets. And we perceive no abuse of discretion in the characterization of the Vancouver real property as Tavakoli's separate property, since his post-separation transfer of those properties to a trust was a transparent effort to reduce assets that could be distributed. *See In re Marriage of Kaseburg*, 126 Wn. App. 546, 556, 108 P.3d 1278 (2005) (while court has no ability to distribute an asset no longer possessed at the time of trial, it may properly consider waste, concealment, or other improper conduct).

It is evident from the record that the trial court considered all of the circumstances before it, including the parties' ages, their skills and backgrounds, the length of the marriage, and the support (totaling approximately $26,000) and property

($10,000) distributed to Vuth while the dissolution was pending. Although Tavakoli complains that the court failed to consider his financial needs in retirement, he did not testify about retirement plans or present evidence of future projected income and expenses. No evidence substantiates the claim that the property distribution will compromise Tavakoli's retirement. And as to Tavakoli's repeated claim of entitlement to a credit for Vuth's alleged conversion of property while he had no access to the marital home and for funds he allegedly loaned to Vuth's brother during the marriage, the trial court, as trier of fact, rejected these claims as unsupported by the evidence and found Vuth's testimony more credible than Tavakoli's. We will not weigh the evidence or assess credibility differently. *DeVogel*, 22 Wn. App. 2d at 48.

Tavakoli fails to establish that the trial court abused its discretion in distributing the parties' property.

B.    Spousal Support

Challenging the award of spousal support, Tavakoli argues that (1) Vuth failed to establish that her income was insufficient to meet her expenses, (2) the trial court failed to consider various ways Vuth could supplement her income, (3) the court did not consider Tavakoli's ability to pay, (4) no authority authorized or required the court to take into account Vuth's career preference, (5) insufficient evidence supports the estimated amount to attend cosmetology school, and (6) the award of maintenance violates public policy because it "forces hardworking professionals to enter retirement as paupers" and provides "enormous windfalls" to younger spouses. Again, we disagree as to each of these arguments.

Under RCW 26.09.090, the statute that governs spousal maintenance, the amount and duration of such maintenance must be just in light of the relevant factors. *In re Marriage of Condie*, 15 Wn. App. 2d 449, 470, 475 P.3d 993 (2020). The non-exhaustive list of factors includes: the financial resources of the party seeking maintenance; the time necessary to acquire sufficient education or training to find employment; the standard of living established during the marriage; the duration of the marriage; the age, condition, and financial obligations of the spouse seeking maintenance; and the ability of the spouse from whom maintenance is sought to meet their own needs and financial obligations. RCW 26.09.090(1)(a-f). Maintenance is designed to be a "flexible tool" to equalize the parties' standard of living "for an appropriate period of time," and "[u]ltimately, the court's paramount concern must be the parties' economic conditions postdissolution." *In re Marriage of Wilcox*, 3 Wn.3d 507, 521, 553 P.3d 614 (2024); *Washburn v. Washburn*, 101 Wn.2d 168, 178-79, 677 P.2d 152 (1984). At the same time, there is no "mandate for trial courts to predict the future, divide assets with mathematical precision, or guarantee future equality." *In re Marriage of Kaplan*, 4 Wn. App. 2d 466, 476-77, 421 P.3d 1046 (2018). Spousal support constitutes an abuse of discretion only where it is not based on a fair consideration of the statutory factors. *Wilcox*, Wn.3d at 521.

The trial court explicitly considered each of the statutory factors on the record. In doing so, the court addressed Vuth's financial resources, including all amounts awarded pretrial and evidence of Vuth's earnings between May 2022 and March 2023 showing, on average, 35-hour work weeks at an hourly rate of between $15.50 and $17.50. There was evidence of Vuth's expenses through the testimony of her former

neighbor, who paid Vuth's bills and provided significant and regular financial assistance to Vuth to meet her expenses. The court considered evidence that Vuth's prior work history included employment involving hair and makeup and that Vuth's former neighbor helped her research local cosmetology programs, learned that the cost was "upwards" of $18,000, and that most guarantee work upon completion.

The thrust of most of Tavakoli's arguments is that the trial court should have weighed or interpreted the evidence differently to reach a different conclusion about the necessity and feasibility of spousal support. Such arguments fail to appreciate that our review is deferential to the trial court's fundamental role as fact finder. "Where there is conflicting evidence, it is not the role of the appellate court to weigh and evaluate the evidence." *Burnside v. Simpson Paper Co.*, 66 Wn. App. 510, 526, 832 P.2d 537 (1992). For instance, Tavakoli argues that a short-term marriage cannot support an award of "long term maintenance." But duration is only one factor, and whether or not the award in this case qualifies as "long-term" maintenance is debatable.

Tavakoli views Vuth's current earnings as sufficient to meet her expenses because, according to his calculation, she earns, on average, $23 dollars per month above her regular expenses and could work more hours. In Tavakoli's opinion, Vuth has "*more* than enough resources to support herself" because she earns, at least, minimum wage income, which is "good enough for hundreds of thousands of American citizens." And, he contends that Vuth is not entitled to pursue "any job she names" at his expense. Tavakoli's position assumes that Vuth does not require health insurance, health care, transportation, internet service, or any discretionary income and ignores

10

the reality of the substantial financial assistance regularly provided to Vuth. Although Tavakoli speculates that Vuth can return to Cambodia and has a variety of means at her disposal to increase her income, the trial court concluded that vocational training in a field that aligns with her background and interests is consistent with the goals of RCW 26.09.090 and the best option to establish a financially sustainable long-term career. Tavakoli cannot show that no reasonable judge would have reached this conclusion. *See Landry*, 103 Wn.2d at 810.

Tavakoli also appears to challenge the evidentiary basis for the former neighbor's testimony and sufficiency of the evidence establishing Vuth's income and expenses, but he points to no objection below. As to Tavakoli's complaint that the trial court did not adequately investigate his ability to pay, he again points to no evidence that would have allowed the court to precisely determine his income and value of his available assets. There was evidence before the court that Tavakoli had 32 years of experience as a board-certified physician, owned a cosmetic surgery practice, and continued to practice. And the evidence included Tavakoli's concession regarding the approximate yearly profit of his medical practice, historical evidence of a salary from his practice between 2018 and 2020, and copies of paystubs for five months of 2021 showing part-time hours and a $90 hourly rate of pay. But again, conspicuously absent was evidence of the current value of his business, the value of his real property, current value of all financial assets, and current income from all sources.

Tavakoli fails to establish that the trial court did not fairly consider the statutory factors in setting spousal maintenance or that its decision amounts to an abuse of discretion.

11

C.      <u>Attorney Fees on Motion for Reconsideration</u>

Lastly, Tavakoli challenges the trial court's award of attorney fees totaling $2,640 to Vuth in connection with the denial of his motion for reconsideration. Tavakoli claims the court failed to identify a basis for the fee award or the method of calculation and did not assess the parties' relative need and ability to pay. Tavakoli maintains that denial of a motion does not, by itself, justify awarding fees. We again disagree with these assertions.

Courts have "continuing equitable jurisdiction" in family law matters that allows them "to grant whatever relief the facts warrant." *In re Marriage of Farmer*, 172 Wn.2d 616, 625, 259 P.3d 256 (2011). The trial court's equitable power includes the power to sanction a party for any action that makes the proceedings unduly difficult and costly. *See In re Marriage of Bobbitt*, 135 Wn. App. 8, 30, 144 P.3d 306 (2006); *In re Marriage of Foley*, 84 Wn. App. 839, 846, 930 P.2d 929 (1997); *In re Marriage of Greenlee*, 65 Wn. App. 703, 708, 829 P.2d 1120 (1992). A party challenging an attorney fee award in a family law proceeding must demonstrate abuse of discretion. *In re Marriage of Burrill*, 113 Wn. App. 863, 873, 56 P.3d 993 (2002).

The record reflects that Vuth sought attorney fees because the motion for reconsideration was not well grounded in fact or law. And Vuth's response to the motion set forth the basis for the amount of fees requested, including the attorney's experience, hourly rate, and time spent responding to the motion. The court's 5-page order denying the motion addresses Tavakoli's reliance on CR 55, although the court did not enter a default order, and his failure to identify specific grounds for relief under CR 59 and CR 60. It is evident that the trial court agreed that the motion was frivolous

and the amount of fees requested was reasonable and appropriate.  The fee award did not simply follow from the denial of Tavakoli's motion, and we cannot say that the court abused its discretion or lacked a tenable basis for awarding fees.

Affirmed.

Feldman, J.

WE CONCUR:

Coburn, J.

Smith, J.